## GALAN v STATE

Ohio Appeals, 9th Dist, Summit Co

No 2257. Decided Dec 16, 1932

Sheck & Stevens, Akron, and A. J. Bianchi, Akron, for plaintiff in error.

Don Isham, Prosecuting Attorney, Akron, and Geo. R. Hargreaves, Ass't Prosecuting Attorney, Akron, for defendant in error.

WASHBURN, J.

The defendant claims that under the facts shown by the evidence he was not guilty as a matter of law, and that the trial court erred in refusing his motion to discharge him at the close of all the evidence.

As will be hereinafter detailed, the evidence of the defendant and others establishes that the defendant entered into a conspiracy with Russell Eworth and Barney Crimi to commit a robbery in the store of the A. Polsky Co.

"Where two or more persons combine or conspire to commit a crime, each is responsible for all acts committed by the others in

the execution of the common design, if such acts are the natural or probable consequence of the unlawful combination or undertaking. In contemplation of law the act of each is the act of all."

1 Cyclopedia of Criminal Law, §508.

But where the mere forming of a conspiracy is not a crime, the law affords a locus poenitentiae, or a time of repentence, and therefore, although several parties consipre to do a criminal act, either one or all of them may so abandon their design before the act is done as to avoid criminal liability for the act.

The defendant in this case claims that more than thirty days before the robbery he withdrew from such conspiracy and notified his co-conspirators of that fact and that he took no part in the robbery.

The case turns upon the question of whether the undisputed and credible evidence establishes that before the robbery was committed, the defendant abandoned his design and withdrew from the conspiracy so as to escape criminal liability for the robbery.

The record discloses that the defendant met Eworth, who was employed in the A. Polsky Co. store, and learned from him how money was handled in the store at certain times, and that the circumstances were such that probably a large sum of money could be secured by a well planned and executed robbery.

Soon thereafter defendant called on Eworth at the store and inspected the situation, and after the two had had several conferences on the subject, the defendant agreed to and did interest Barney Crimi in the matter and later brought Crimi to the store to meet Eworth and look over the various rooms, stairways and entrances to the building, with a view of planning a robbery.

The three then met at Eworth's home and agreed upon plans for the robbery and the division of the spoils, it being understood that Eworth was not to take any part in the robbery and that Joe Mihally was to drive the get-away car; and the plan as then contemplated was to hold up an employee of the Polsky Co. on one of the stairways in the store.

That was some six weeks before the robbery took place; and then about three or four weeks before the robbery the three met again at the store, and at that time, according to the testimony of Crimi, "Galan kind of got to thinking it over and decided he wanted to withdraw from it. He said he didn't like it. He had run into some girl, and he said 'that woman knows me, and I don't care to participate in it'."

According to the testimony of the defendant, his version of what transpired at that meeting is as follows: "We looked over the inside of the building where we were figuring on doing the robbery, and I suggested to Barney (Crimi), 'no use doing it in here, we might as well wash out of the whole thing.' I told him there was no possible chance, and I says 'as far as doing it we are going to get caught up on it, as far as we are both concerned and I am going to drop out,' and he agreed with me at that time and that was the last I ever said to him about the Polsky robbery."

Eworth also testified that later he had a talk with Crimi as to a change in the split of the proceeds, but that he had no talk on that subject "with Galan (defendant) after he dropped out"; and when Eworth was arrested and made a full confession, he said that in a certain conversation with the defendant he did not say anything about a payroll "because Tony (defendant) and I had dropped the whole thing."

After the conversation in which the defendant says he withdrew from the conspiracy, Crimi secured the help of four men with criminal records from Cleveland, and the plan was slightly changed to a holdup of the employee of the company with the money for the payroll while in the street in front of the store, and that plan was successfully carried out.

There is no evidence in the record that the defendant knew about the Cleveland men until after the robbery, and neither is there any evidence that after said claimed withdrawal he conferred with any of said parties about robbing said store, but there is evidence that just before the robbery he was on the street near said store and that after the robbery he unsuccessfully tried to get in touch with Crimi and that he did go to see Eworth, but he did not claim or receive any part of the proceeds of the robbery or take any part in the actual robbery.

Thus it will be seen that the defendant entered into a conspiracy to commit a robbery, which, in and of itself, is not a crime in Ohio, and that before the robbery he notified both of his fellow-conspirators that he had withdrawn from the conspiracy and that they recognized and respected his withdrawal and went forward with others and committed the robbery, and that the defendant had no part in the conspiracy after his withdrawal and no part in the

robbery.

However, he did not repent from any worthy motive, did not attempt to dissuade his co-conspirators from going ahead with the project, and he did not attempt to prevent the robbery by notice to the Polsky Co. or the public authorities.

The trial judge evidently concluded that the defendant was the chief instigator in the conspiracy, and that to render his withdrawal effective to absolve him, he was required to do something more than announce his withdrawal to his co-conspirators and thereafter do nothing in furtherance of the conspiracy; that he was called upon to do something to prevent the carrying out of the act which he had induced others to agree to do.

While we sympathize with that view, we can find no support for it in the cases in this country which relate to the right of a conspirator to withdraw from a conspiracy before the act involved in the conspiracy has been committed.

In cases where the mere entering into a conspiracy is not a crime, the theory by which one who does not do an act but conspires with another to do it, is held criminally liable for the doing of the act, is that the one doing the act acts for the other; and if, before he does the act, he is notified by such other not to do it for such other, he cannot be said to be thereafter acting for such other or that such other induced him to do the act, and therefore there is no basis for criminal responsibility on the part of such other.

There are very, very few cases involving the question of what a conspirator must do to withdraw from the conspiracy and escape responsibility for what is thereafter done in furtherance of the conspiracy. The general rule is stated as follows:

"A person is not guilty of a crime as accessory or principal in the second degree because of counselling or consenting, if he repented and countermanded the other party, or withdrew, to the knowledge of the other, before the crime was committed. To relieve him from liability under this rule, however, he must in some way inform his confederate of his change of purpose."

1 Cyclopedia of Criminal Law, §250.

"The fact that one who has counseled commission of a crime, or agreed to take part in it, repents, and withdraws his advice, and abandons the purpose, may or may not relieve him from liability. If he does so when it is too late to prevent the crime, he is nevertheless guilty as accessory, but if he does so before his advice is acted on in any way, or if he does all in his power to prevent it, and his efforts are unavailing because some new cause intervenes, he is not guilty. Mere disapproval, however, after having counseled a crime, without any effort to prevent its commission, or mere withdrawal without the knowledge of his confederate, will not relieve him."

Clark's Criminal Law (Hornbook Series), p. 93.

These statements of the rule seem to be well established, and where a conspirator bona fide withdraws and seasonably notifies his co-conspirators of his withdrawal, we can find no warrant in any of the cases for requiring him to go further and try to dissuade his co-conspirators, or to try, by notice to public authorities or others, to prevent the carrying out of the act involved in the conspiracy. The law seems to be that if, by entering a conspiracy, I authorize others to act for me, I may revoke that authority so far as my criminal liability is concerned, by simply withdrawing from the conspiracy and seasonably notifying the other conspirators of that fact, and doing nothing thereafter in furtherance of the conspiracy; if the rule is to be changed so as to require me to also try to dissuade my former co-conspirators and to do all in my power to prevent the carrying out of the conspiracy, it should be changed by the legislature and not by the courts.

There being no real conflict in the evidence in this case, we are bound to conclude that the defendant withdrew from said conspiracy and notified the other conspirators in time to relieve him from criminal responsibility for said robbery, and that he thereafter took no part in the conspiracy or the robbery, and that therefore the trial court should have granted the motion of the defendant for his discharge at the close of all of the evidence.

The judgment will therefore be reversed, and the judgment discharging the defendant which should have been entered by the Common Pleas Court, may be herein entered.

PARDEE, PJ, and FUNK, J, concur in judgment.