No. 67,377

STATE OF KANSAS, *Appellee,* v. ROGER D. TUCKER, *Appellant.*

(853 P.2d 17)

Opinion filed May 28, 1993.

*Garry L. Howard,* of Slape and Howard, of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Byrd,* assistant district attorney, argued the cause, and *Rachelle Worrall Smith,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

Six, J.: The primary issue in this criminal case concerns the relationship between possession of cocaine and possession of cocaine with intent to sell: What is the appropriate remedy when a defendant is convicted of possession with intent to sell, but an appellate court determines that the evidence supports only possession? The question is one of first impression.

The Court of Appeals, in an unpublished opinion filed October 2, 1992, reversed Roger Tucker's conviction of possession of cocaine with intent to sell (K.S.A. 65-4127a). The case was remanded to enter a new judgment of conviction for possession of cocaine and to resentence for possession.

We also address secondary issues concerning Tucker's claims of: (1) sufficiency of the evidence, (2) admissibility of police officer testimony, and (3) ineffective assistance of counsel. Our jurisdiction arises from granting Tucker's petition for review.

We find no error and affirm.

## Facts

Tucker's claim of insufficient evidence signals a recitation of the events leading to his arrest.

Police Lieutenant Marceau testified that around 1:00 a.m. on May 20, 1991, he noticed a car protruding into the street from a Wichita motel driveway. According to Marceau, three persons were near the car. As Marceau pulled behind the car, the three left. Marceau noticed that the driver of the car (Tucker), a black male, was wearing sunglasses, a black hat, and a dark shirt. Shortly before, Marceau had received reports that there had been one or two robberies in which a black male had worn dark sunglasses and dark clothing. Marceau suspected that Tucker had been involved in those robberies.

Both Marceau and Tucker got out of their cars. Tucker stood between his car and the car door with his left hand hidden by the door. Marceau drew his revolver and ordered Tucker to slowly raise his left hand. Tucker did not comply with Marceau's demands for several seconds and then raised his left hand quickly. Marceau immediately heard what sounded like a cup dropping onto the pavement on the passenger side of Tucker's car. Marceau did not observe anything in Tucker's hand or see Tucker throw anything.

Marceau began to search for what he believed Tucker had thrown. Marceau found a plastic tube used for holding cough suppressants on the ground near the passenger side of Tucker's car. Officer Peckenschneider, who had arrived at the scene, noticed an orange cap with two rocks of cocaine lying on the hood of the car. There were also eight rocks of cocaine along the windshield wiper. The cap fit the empty tube of cough suppressants found by Marceau. Peckenschneider searched Tucker's car for weapons. A crack pipe was found in the center console ash tray. A billfold with Tucker's identification and a large roll of money, totaling $784, were in a jacket found under the passenger seat.

Tucker was arrested and searched, but no contraband was found on his person. The officer who conducted the search testified that Tucker appeared to be very nervous and that his legs kept shaking. At the time of his arrest, Tucker told the police he did not know why there were crack rocks on the hood of the car and did not know there was a crack pipe inside the car. He indicated that he did not own the car and that the money was for meals.

At trial, Tucker testified that he was unaware of the presence of the pipe in the center console ash tray. He also claimed that at the time of his arrest he had "no cocaine on me at any time." Tucker stated that he had nothing in his hands when he exited the car or at all other times that evening. He testified that he was carrying the cash because he did not have a bank account. According to Tucker, the money also belonged to his girlfriend and they were saving the cash for an apartment. The girlfriend testified that she had given Tucker approximately $500 toward the apartment rental.

Tucker also testified that prior to his arrest, 5 to 10 people rushed his car and offered him crack cocaine, which they held in their hands. Tucker denied having seen the cough suppressant tube prior at the time when the police showed it to him. According to Tucker, when Marceau arrived, "[e]veryone started yelling cops and stuff like that and started throwing the stuff down and running."

William Webb, who was standing outside the car and speaking with Tucker before Marceau's arrival, testified that four or five individuals were congregated around the car trying to sell Tucker

drugs. Webb further explained that when the police arrived the group of people panicked, ran away, and tossed cocaine rocks on the ground. On cross-examination, he indicated that he did not see anyone throw cocaine rocks at the car. Webb testified that he observed Tucker's contact with the police and had not seen Tucker in possession of the cough drop bottle at any time. Webb also stated that he had not witnessed Tucker throwing any objects.

At trial, Marceau explained that in his four years as a narcotics detective he had been involved in several hundred undercover narcotics buys. Marceau also had three years' experience as a supervisor in narcotics, vice, and the Special Community Action Team (SCAT).

The State asked Marceau:

"Q. . . . [H]ave you had any experience with crack cocaine dealers carrying cash?

"A. Yes.

. . . .

"Q. What is that experience?

"MR. LEWIS [defense counsel]: Objection, Your Honor, irrelevant.

"THE COURT: I will overrule that objection.

"A. As the result of making undercover buys, supervising officers in making undercover buys, it's common for crack dealers to have extensive amounts of currency."

New counsel was appointed to assist Tucker during the post-conviction motion arguments and to represent him on the ineffective assistance of counsel claim. The trial court, in denying Tucker's motion for a new trial, heard lengthy testimony on the ineffective assistance of counsel claim.

The Court of Appeals: (1) determined that there was sufficient evidence to support the finding that Tucker possessed cocaine but insufficient evidence that he possessed cocaine with intent to sell; (2) found that Tucker had not overcome the presumption that his counsel's assistance was reasonable; and (3) did not address Tucker's complaint concerning the testimony indicating crack dealers commonly carry extensive amounts of currency.

### Reversal of Tucker's Conviction of Possession of Cocaine With Intent to Sell

The Court of Appeals reasoned:

"Although Tucker was not charged with possession, possession is an included crime of possession with intent to sell. It is a crime necessarily proved if the crime charged were proved. K.S.A. 21-3107(2)(d); *State v. Hagan*, 3 Kan. App. 2d 558, 560, 598 P.2d 550 (1979), *rev. denied* 227 Kan. 928 (1980).

"In *State v. Smith*, 4 Kan. App. 2d 149, the defendant was charged with and convicted of possession with intent to sell marijuana. This court determined that there was insufficient evidence of intent to sell and held that the appropriate remedy was to sentence the defendant for the possession. 4 Kan. App. 2d at 153. We recognize that possession of marijuana is a lesser included offense, whereas possession of cocaine is an included (not lesser included) offense. But, for the purpose of resolution of this appeal, it is a distinction without a difference."

The Court of Appeals concluded:

"Possession and intent to sell are separate elements of the crimes of possession with intent to sell either cocaine or marijuana. A finding of guilty of possession with intent to sell requires proof of possession. Conversely, proof of possession without proof of intent to sell is still sufficient proof of a crime, whether it is an included crime or a lesser included crime (assuming proof of date and county)."

We agree with the Court of Appeals' analysis.

Tucker objects to the remand ruling; emphasizing that at no time had a jury or trial court been asked to make a determination of Tucker's guilt of possession of cocaine. According to Tucker, the crime with which he was charged (possession with intent to sell) was never proved because the Court of Appeals set aside the conviction. Tucker argues that the State should be bound by its decision to charge him with possession with intent to sell. Additionally, Tucker explains that in *State v. Smith*, 4 Kan. App. 2d 149, 603 P.2d 638 (1979), relied on by the Court of Appeals as controlling, the defendant's guilt of simple possession of marijuana was unchallenged.

The verdict form completed by the jury did not provide the option of finding Tucker guilty of possession. The jury was instructed that Tucker was charged with possession of cocaine with intent to sell and that the State had to prove that Tucker intentionally: (1) possessed cocaine (2) with intent to sell. Additionally, the jury was instructed that the term possession means "having control over the substance with knowledge of, and intent to have such control." The pattern instruction for possession provides

that, in the context of Tucker's case, the State would have needed to prove (1) that Tucker possessed cocaine and (2) that he did so intentionally. PIK Crim. 2d 67.16. The Court of Appeals was correct in its statement that the crime of possession is necessarily proved if the possession with intent to sell charge is proved.

Possession of cocaine is not a lesser degree of possession with intent to sell because both are class C felonies. K.S.A. 65-4127a. It is, however, an included crime as defined in 21-3107(2)(d). The appropriate remedy has been applied in the case at bar. None of Tucker's fundamental rights have been violated. Tucker was convicted of possession with intent to sell, but the evidence supports only the included offense, *i.e.*, possession. Tucker is to be sentenced for possession.

## Possession of Cocaine

Tucker contends that the evidence did not prove that he possessed cocaine.

Our standard of review when the sufficiency of the evidence is challenged on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Evans,* 251 Kan. 132, Syl. ¶ 1, 834 P.2d 335 (1992).

The State observed that possession and intent may be proved by circumstantial evidence. See *State v. Bullocks,* 2 Kan. App. 2d 48, 49, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978). "Possession may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control." 2 Kan. App. 2d at 49-50.

The determination that the evidence supported possession in the case at bar is based on circumstantial evidence. The circumstantial evidence, viewed in the light most favorable to the prosecution, must support the finding that Tucker knowingly and intentionally possessed cocaine.

We have reasoned that "[i]n addition to requiring mere knowledge of the presence of the controlled substance or mere physical control, a conviction for possession requires the jury to find the accused had an intent to exercise control over the substance.

[Citations omitted.]" *State v. Graham,* 244 Kan. 194, 205, 768 P.2d 259 (1989). Tucker does not dispute that cocaine rocks were found on the hood of his car. He contends the rocks were thrown at the car by individuals who quickly left the scene at the sight of the patrol car. However, Webb, Tucker's witness, stated he did not see anyone throw cocaine rocks in the direction of Tucker's vehicle.

Marceau heard a sound like a cup hitting the pavement immediately after Tucker quickly raised his left hand. Tucker's hand was hidden from Marceau's view. Marceau searched for what he believed to be "the only thing that would have made that sound" and found an empty cough suppressant tube. The cap to the plastic tube was found on the hood of Tucker's car. The cap had two cocaine rocks in it and eight cocaine rocks near it. A review of the evidence in the light most favorable to the prosecution reflects sufficient evidence to support the finding that Tucker possessed cocaine.

## Additional Issues

Marceau testified that his experience indicated that crack dealers commonly carry extensive amounts of currency. Because Tucker's conviction of possession with intent to sell was reversed, the Court of Appeals declined to consider the alleged error of admitting Marceau's testimony. The testimony relates to possession with intent to sell. We agree with the Court of Appeals' conclusion.

In his petition, Tucker requests us to review the Court of Appeals' ruling that his trial counsel was not ineffective. Tucker does not identify particular errors in the reasoning of the Court of Appeals.

The Court of Appeals stated that Tucker's six ineffective assistance of counsel claims could be boiled down into two claims: "those errors occurring in preparation of the trial and those errors occurring at the trial." Tucker's trial counsel was called as a witness and questioned at the post-trial motion hearings.

To prevail on a claim of ineffective assistance of counsel, Tucker must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability the result would have been different had Tucker received

effective assistance. See *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Tucker must "overcome a presumption counsel's assistance was reasonable." 236 Kan. at 654.

The Court of Appeals examined the facts and found:

"While counsel did not spend a great deal of time with Tucker, a review of the record shows that he spent an appropriate amount of time with Tucker in person and on the phone to prepare for the trial. Counsel stated he thought he had learned all he could from Tucker concerning the case. He also stated Tucker was not receptive to his suggestions about Tucker's testimony. As for questions not asked by counsel and witnesses not called by him, those decisions lie with counsel. *Winter v. State*, 210 Kan. 597, Syl. ¶ 2, 502 P.2d 733 (1972).

"Tucker did not overcome the presumption that counsel's assistance was reasonable. Therefore, analysis of the second prong under *Chamberlain* is unnecessary."

We agree.

Tucker claims: (1) his court-appointed attorney from the public defender's office failed to spend sufficient time with him to properly counsel him and advise him as to the preparation and trial of his case; and (2) the attorney failed to investigate, interview, and have crucial witnesses testify in his case.

Tucker asserted that a variety of facts testified to in the post-trial hearing are relevant to the objective standard used to evaluate the ineffective assistance of counsel claim. Tucker contended that, in combination, the facts proved that his attorney's representation fell below a reasonable standard. He reasoned that his pretrial incarceration rendered him entirely dependent upon his attorney's investigation of witnesses. Consequently, Tucker believed that his attorney had a duty to follow up all leads he had provided.

Concerning the second prong of the *Strickland/Chamberlain* test, Tucker argued there is a reasonable probability that the testimony of Bell and Williams would have altered the outcome of the trial. According to Tucker, both Bell and Williams testified at the post-trial hearing that no one from the public defender's office made any attempt to contact them. Both witnesses also stated that they had a clear view of the incident, did not see Tucker possess cocaine, and did not see him throw any objects. Tucker noted that Bell and Williams both testified they had seen several people who were trying to sell cocaine throw the rocks

into the air when the police arrived. Bell also testified that there was an individual in the lot holding a red bottle.

Tucker maintained that the testimony of these witnesses was particularly important, given the fact that the jury had to evaluate two conflicting stories. He believed that, with the addition of the corroborating testimony of Bell and Williams, "one could hardly say that this would not give a sufficient probability of undermining confidence in the outcome of the guilty verdict."

"The Sixth Amendment right to counsel is the right to the effective assistance of counsel, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Chamberlain v. State,* 236 Kan. 650, Syl. ¶ 2, 694 P.2d 468 (1985).

The State's position is that our review should be deferential to the trial court's judgment that Tucker's counsel was not ineffective. We agree. See *State v. Humphrey,* 252 Kan. 6, 25, 845 P.2d 592 (1992).

The absent witnesses, the State contended, reinforced the fact that the parking lot was a drug dealer's paradise and were of questionable credibility. The State emphasized that neither Bell nor Williams could actually dispute the events Marceau observed.

Concerning Tucker's trial counsel's alleged errors in preparing for trial, the Court of Appeals correctly determined that counsel had spent an appropriate amount of preparation time. Trial counsel is entitled to make strategic choices.

Tucker asserts that Bell should have been contacted by counsel and subpoenaed to testify. Counsel admitted that this failure was due to error in reading his notes. Bell's testimony at the hearing indicates that his statement would have corroborated Tucker's story. Assuming, for discussion, that counsel's error regarding Bell falls below the objective standard of reasonableness, the second prong of the *Strickland/Chamberlain* test should be considered. Under this prong, the assumed deficient performance concerning Bell must have prejudiced Tucker so as to have deprived him of a fair trial. See *State v. Dunn,* 243 Kan. 414, 440, 758 P.2d 718 (1988).

The record indicates that the trial court gave careful consideration to the issue of Bell's testimony. The trial judge was in a position to evaluate Bell's credibility, as well as the credibility of the other witnesses. We find no error.

The case is remanded with directions that the trial court enter a new judgment convicting Tucker of possession of cocaine and impose a new sentence for that offense.

The judgment of the Court of Appeals is affirmed; the judgment of the district court is reversed, and the case is remanded with directions.

DAVIS, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.