No. 69,904

STATE OF KANSAS, *Appellee*, v. DAVID ROYCE PRATT, *Appellant*.

(876 P.2d 1390)

Opinion filed July 8, 1994.

*Edgar Wm. Dwire,* of Malone, Dwire and Jones, of Wichita, argued the cause and was on the brief for appellant.

*David Lowden,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: David Royce Pratt appeals his bench trial convictions of 11 felonies arising from two separate incidents.

## SEPTEMBER 21, 1991

During the nighttime hours of September 21, 1991, defendant and Darron Edwards entered the Wichita residence of 64-year-old M.C. and her 92-year-old mother, R.C. M.C. was beaten, raped, and sodomized. Both women were forced into M.C.'s automobile and driven to Emporia. On the way, Edwards attempted to again rape M.C. From this incident Pratt was convicted of aggravated burglary (K.S.A. 1992 Supp. 21-3716); aggravated criminal sodomy (K.S.A. 21-3506); rape (K.S.A. 21-3502); attempted rape (K.S.A. 21-3502, K.S.A. 1992 Supp. 21-3301); and

two counts of aggravated kidnapping (K.S.A. 21-3421). Edwards' convictions arising from this incident were before this court in *State v. Edwards*, 254 Kan. 489, 867 P.2d 355 (1994).

## SEPTEMBER 26, 1991

Defendant and Michael Graff entered the Wichita residence of an elderly couple, Omer and Mina Lindamood. Both residents were beaten, and items were taken from their residence. From this incident, defendant was convicted of aggravated burglary (K.S.A. 1992 Supp. 21-3716); two counts of aggravated robbery (K.S.A. 21-3427); and two counts of aggravated battery (K.S.A. 21-3414).

## SUFFICIENCY OF THE EVIDENCE

For his first claim under this issue, defendant contends that, by virtue of his voluntary intoxication, he lacked the specific intent necessary for his convictions of:

1. aggravated burglary,
2. aggravated kidnapping,
3. aggravated battery, and
4. rape and aggravated criminal sodomy (convicted as an aider and abettor in these two offenses).

The standard of review when the sufficiency of the evidence is challenged on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found defendant guilty beyond a reasonable doubt. *State v. Wacker*, 253 Kan. 664, Syl. ¶ 4, 861 P.2d 1272 (1993); *State v. Stone*, 253 Kan. 105, Syl. ¶ 2, 853 P.2d 662 (1993); *State v. Tucker*, 253 Kan. 38, Syl. ¶ 3, 853 P.2d 17 (1993). The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of a charge are sustained. *State v. Patterson*, 243 Kan. 262, Syl. ¶ 1, 755 P.2d 551 (1988); *State v. Willis*, 240 Kan. 580, 587, 731 P.2d 287 (1987); *State v. Pink*, 236 Kan. 715, 729, 696 P.2d 358 (1985).

Voluntary intoxication is neither an excuse for nor a justification of crime. In specific intent crimes, however, voluntary intoxication

may be raised as a defense. *State v. Gonzales*, 253 Kan. 22, Syl. ¶ 1, 853 P.2d 644 (1993).

K.S.A. 21-3208(2) provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

Specific intent as an element of the crime charged is normally a question of fact for the finder of fact to determine and may be shown by acts, circumstances, and inferences reasonably deducible therefrom and need not be established by direct proof. *State v. Dubish*, 234 Kan. 708, 716, 675 P.2d 877 (1984). As this was a bench trial, the trial judge was the finder of fact.

Defendant contends that the testimony of Dr. R. Burney White established his inability to form the requisite intent necessary for conviction of the specific intent crimes because of his voluntary intoxication. White, who is certified in addictive medicine, testified that, prior to interviewing defendant, he reviewed defendant's school and medical records. Meeting with defendant for "a little over an hour," White reviewed defendant's life history, his chemical use history, his physical abnormalities, and his emotional difficulties. When White asked what drugs he had been using, defendant answered "everything," including butane, marijuana, cocaine, speed, and alcohol, prior to the September 21 and September 26, 1991, incidents. White testified concerning the synergistic effect of combining cocaine and alcohol: "[Y]ou feel more alive but if you go over the edge you become sufficiently deranged, you can't make any plans but you're still awake and moving about." White was unaware of any minimal amounts of an alcohol-cocaine mix which would cause this condition, stating, "[I]t's an unpredictable response with relatively small amounts because they augment each other." White stated that mixing cocaine and alcohol formed a toxic, brain-damaging agent called cocaethylene.

White did not question defendant concerning his memory of events that led to the charges against defendant. White further stated that when defendant told his story of events in his life, he

either chose to ignore the incidents or he did not remember what had occurred on the nights in question. White opined that defendant would, under these circumstances of mixing alcohol and cocaine, be unable to form the requisite intent because he was too sick. On cross-examination, White admitted that doctors do not, on a regular basis, offer an opinion concerning specific intent in a past event because there is no testing instrument for determining intent.

The finder of fact also had before it considerable evidence of defendant's words and actions during the commission of the crimes from which he could determine whether or not the State had proven the element of specific intent. M.C.'s first contact with Pratt and Edwards was when they entered her bedroom and disabled her telephone. The two men were conversing as they went back downstairs. She followed them out of concern for her elderly mother, who was in a downstairs bedroom. When she arrived, R.C. had been tied to the bed. Pratt then confronted her, asking if she had a VCR, camcorder, or camera. When M.C. answered in the negative, Pratt struck her twice in the face and kicked her after she fell. While Edwards was raping and sodomizing M.C., defendant spent much of the time ransacking the house looking for valuables. He complained that the home offered so few pawnable items that it was like a convent. Defendant was present part of the time in the room when Edwards was sexually assaulting M.C. and also actively participated in the kidnapping of the two women. As M.C. was being taken to the automobile, Pratt noticed a necklace she was wearing. Pratt asked her if it was a gold chain. When she answered that it was, he yanked it from her neck and put it in his pocket.

At the Lindamood residence, defendant was armed with a shotgun. He knocked out Mr. Lindamood with the butt of the gun after being told by Graff to take care of the man so he would not make any noise. Mrs. Lindamood received skull fractures from a beating during the robbery. Various items of value were taken from the Lindamood home.

There was sufficient evidence from which the finder of fact could conclude that the State had met its burden of proof on

specific intent. The finder of fact could reasonably have concluded that the defendant entered both residences with the intent to take items of value from their occupants and did so take property using force to accomplish this purpose. The evidence also supports a finding of the necessary intent for the conviction as an aider and abettor of the sex crimes against M.C. and as a principal in the kidnappings. Sufficient evidence was present from which the finder of fact could have concluded defendant was an active participant in all crimes involved in this issue and had the requisite specific intent for their commission.

For his next claim, defendant contends there was insufficient evidence to support his conviction for attempted rape. As previously noted, defendant was an active participant in forcing M.C. and R.C. into M.C.'s automobile. Edwards was the driver. M.C. was in the passenger seat. Defendant was in the back seat with R.C. Before the vehicle left Wichita, defendant exited the vehicle at a traffic signal. There was evidence he left the vehicle because he was sick and/or believed Edwards was going to leave the state, which defendant did not want to do.

On this claim, defendant argues:

1. By virtue of his voluntary intoxication there was insufficient evidence of the specific intent necessary to convict him as an aider and abettor of the attempted rape;
2. the crime was not foreseeable; and
3. he had withdrawn from the criminal enterprise prior to the commission of the crime in question.

The first point on this claim has been determined adversely to defendant earlier in this opinion.

As to the foreseeable point, K.S.A. 1992 Supp. 21-3205 provides:

"(1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended.

"(3) A person liable under this section may be charged with and convicted of the crime although the person alleged to have directly committed the act constituting the crime lacked criminal or legal capacity or has not been convicted or has been acquitted or has been convicted of some other degree of the crime or of some other crime based on the same act."

The attempted rape was clearly foreseeable by defendant. Edwards had already raped and sodomized M.C. in her residence. Further, M.C. was under Edwards' control in the ongoing kidnapping, and he was leaving the city with her. M.C.'s mother, 92-year-old R.C., was very infirm and in no condition to give aid to or prevent further harm to her daughter. We find no merit on this point.

Defendant's final point is that he had withdrawn from the crime spree before the attempted rape was committed and, accordingly, could not be convicted as an aider and abettor to that crime. Defendant cites no authority in support of this point.

In *People v. Brown*, 26 Ill. 2d 308, 186 N.E.2d 321 (1962), four men, at least two of whom were armed, entered into a building, announced that it was a stickup, and told the individuals present to lie on the floor. Brown argued he had withdrawn from the scene prior to the felony murder of one of the victims. The Illinois Supreme Court stated:

"Defendant's initial contention that he is not guilty of murder because he had abandoned and withdrawn from the criminal enterprise of his companions must fail in two respects. We held in *People v. Rybka*, 16 Ill. 2d 394, 406, that it is 'the communication of intent to withdraw and not the naked fact of withdrawal that determines whether one who advised, encouraged or incited another to commit a crime is to be released from liability as an accessory before the fact.' To this need may be added the further requirement that the withdrawal must be timely, that is to say it must be 'such as to give his coconspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act is committed,' and it must be possible for the trier of fact 'to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed.' (*People v. Nichols*, 230 N.Y. 221, 129 N.E. 883, 886; also see *Galan v. State*, 44 Ohio App. 192, 184 N.E. 40.) Stated otherwise, withdrawal may not be effectively made from a felony murder when the 'transaction which begets it has actually been commenced.' *People v. Nichols*, 230 N.Y. 221, 129 N.E. 883, 886." 26 Ill. 2d at 312-13.

Defendant actively participated in and aided in the aggravated kidnappings which were in progress when he left the vehicle. There is no evidence that he left because he wanted no further involvement in criminal activity. Rather, defendant left because he felt physically sick and/or did not want to leave the state. Crimes he had aided in starting in motion continued in his absence with the foreseeable result. An aider and abettor does not have to be physically present when the crime is committed. We conclude there was sufficient evidence to support the attempted rape conviction herein.

## UNBRIEFED AND UNARGUED ISSUES

For his final contentions, defendant lists 10 other issues. These issues were neither briefed nor argued and are, accordingly, deemed to have been abandoned. See *State v. Smith*, 245 Kan. 381, Syl. ¶ 6, 781 P.2d 666 (1989); *State v. Words*, 226 Kan. 59, 63, 596 P.2d 129 (1979); *State v. Mims*, 222 Kan. 335, Syl. ¶ 6, 564 P.2d 531 (1977).

The judgment is affirmed.