**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 9 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOSHUA BRANDON KAISER,

    Petitioner-Appellant,

v.

MICHAEL A. NELSON; ATTORNEY
GENERAL OF KANSAS,

    Respondents-Appellees.

No. 00-3016

(D.C. No. 97-3239-DES)

(D.Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** and **BRISCOE,** Circuit Judges, and **COOK**, District Judge. **

---

    Joshua Brandon Kaiser appeals the district court's denial of his 28 U.S.C.

§ 2254 petition for habeas corpus relief. We exercise jurisdiction pursuant to 28

U.S.C. § 1291 and affirm.

I.

---

    *This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    ** The Honorable H. Dale Cook, Senior District Judge, Northern District of Oklahoma, sitting by designation.

Kaiser does not dispute the underlying facts of this case as set forth by the

Kansas Supreme Court in Kaiser's direct appeal:

[Joshua] Kaiser and [Jason] Schaeffer were AWOL from a juvenile drug and alcohol treatment facility. During the early morning hours of March 1, 1993, Kaiser and Schaeffer left the house of a friend, T.J. Solis. In his statements to the police, Kaiser admitted that he and Schaeffer, who had an unloaded sawed-off .410 shotgun and two shells, left Solis' house to steal a vehicle. Around 3 a.m. they observed Tim Riley start his car and then return to his house. Kaiser suggested they steal the car. Because Schaeffer was concerned Riley would call the police to report the car stolen, Schaeffer decided they should wait for Riley to return and take him hostage. As they waited, Kaiser stated, he informed Schaeffer that he did not want to do it. As Kaiser started walking away, Riley came out of the house. Kaiser looked back and heard Schaeffer "cock" the gun and tell Riley that his friend had a .45 pistol. Riley was forced into the driver's seat. As Kaiser continued to walk away, the car pulled up and Schaeffer told him to get into the front seat of the car. Schaeffer forced Riley into the trunk of the car, and Riley asked them to take care of the car.

Solis became aware they had returned to his house when Kaiser threw snowballs against a window. Solis went outside. Kaiser was sitting in the passenger seat of a car, and Schaeffer was in the driver's seat. A shotgun that a friend had left at Solis' house several days earlier was on the back seat. Schaeffer told Solis they had "jacked" a guy. Solis understood that to mean a carjacking. Schaeffer informed Solis that the owner of the car was in the trunk. Because Solis was skeptical, Schaeffer said toward the back of the car, "Are you all right back there, sir?" Solis was surprised by a voice responding from the trunk, "Yeah, I'm all right." Schaeffer told Solis to get into the car, but Solis declined. Schaeffer drove away with Kaiser in the passenger seat and Riley in the trunk.

Five minutes after Schaeffer and Kaiser departed, Solis called the police and spoke to an officer. Solis told the officer that a person was in the trunk of a car. He gave the officer the make of the car and the license number. He informed the officer that Schaeffer and Kaiser would return to his house to pick up clothes that they had left at his house.

2

After leaving Solis' house, Schaeffer and Kaiser drove to the country. Schaeffer suggested to Kaiser that they kill Riley. Kaiser said he told Schaeffer he was not killing anyone and requested Schaeffer to drop him off and allow him to walk home. Kaiser said he later told Schaeffer not to kill Riley or he would get the hard 40, but Schaeffer ignored him. Schaeffer stopped the car, let Riley out of the trunk, and told Riley to stand near a fence post with his back to him. Kaiser said he remained in the car with the window open, smoking a cigarette. Schaeffer asked Riley how the ride was, and Riley replied that it was a little bumpy. Schaeffer then shot Riley in the back of the head. After the shooting, Kaiser exited the car and walked to the body. Kaiser observed blood coming from Riley's mouth and head. Schaeffer took Riley's watch and ring. Kaiser indicated he felt sad and was in a daze.

Later, Solis again heard Kaiser throwing snowballs against a window. Solis notified the police by telephone that Schaeffer and Kaiser had returned. Solis met Kaiser at the back door of the house. Kaiser asked for clothes he and Schaeffer had left at the house, and Solis retrieved the clothes. Nothing was said about the man in the trunk of the car. Solis said that either Schaeffer or Kaiser told him that they were leaving for Texas. After Schaeffer and Kaiser drove away, Solis again telephoned the police.

The police located the car and a chase ensued, ending when the car crashed into a tree. After a foot chase, Kaiser and Schaeffer were apprehended hiding in a car several blocks from the scene of the crash. Kaiser gave audiotaped and videotaped statements. Kaiser stated to the police, "It was me or him [Riley], or both of us." Kaiser did not inform the police that they had stopped at Solis' house before taking Riley into the country. Kaiser later admitted that they had stopped at Solis' house after Schaeffer killed Riley. Kaiser indicated to the police that Schaeffer was acting crazy. After giving the statements Kaiser directed the police to a field where Riley's body was found. Riley had died of a single gunshot wound to the back of the head fired from a distance of less than 4 feet.

State v. Kaiser, 918 P.2d 629, 632-33 (Kan. 1996).

Kaiser was charged in Kansas state court with aggravated kidnapping (Kan. Stat. Ann. § 21-3421), first degree felony murder (Kan. Stat. Ann. § 21-3401),

aggravated robbery (Kan. Stat. Ann. § 21-3427), and unlawful use of a weapon (Kan. Stat. Ann. § 21-4201). The trial court denied Kaiser's requested jury instruction on the defense of withdrawal and the jury convicted Kaiser of all the charges. The trial court sentenced Kaiser to life for aggravated kidnapping, life for felony murder, fifteen years to life for aggravated robbery, and one to five years for unlawful use of a weapon. All sentences were imposed concurrently except the fifteen-years-to-life sentence for aggravated robbery.

Kaiser argued in his direct appeal, *inter alia* , that there was insufficient evidence to convict him of the charges and that the trial court erred in not instructing the jury on the defense of withdrawal. Kaiser claimed there was "insufficient evidence to support his convictions because the State's evidence was that he was not involved in the crimes, but merely was present, and he was not an aider and abettor." Kaiser , 918 P.2d at 633. The Kansas Supreme Court concluded the evidence was sufficient to convict Kaiser, specifically stating:

> Kaiser initiated the events by developing a plan with Schaeffer to steal a car. He knew Schaeffer was carrying a shotgun and shells. At times Kaiser had possession of the shotgun. When Schaeffer and [Kaiser] observed Riley start his car, [Kaiser] suggested taking that particular car. [Kaiser] claimed he did not want to take a hostage, but the jury found this claim was not credible. [Kaiser] accompanied Schaeffer in Riley's car after Schaeffer ordered Riley into the trunk of the car. The jury was also aware that Kaiser had several opportunities to report that Riley was in the trunk of the car. Kaiser was present when Schaeffer shot and killed Riley. [Kaiser's] footprints were near the body. Both times Kaiser and Schaeffer stopped at Solis' house, [Kaiser] exited the car but returned rather

4

than leave Schaeffer.

Further, [Kaiser] engaged the police in a foot chase after Schaeffer crashed Riley's car into a tree. After the car crashed, [Kaiser] was in no danger from Schaeffer and could have then turned himself in to the police, but instead he ran away and hid in a car until he was found. In fact, [Kaiser] had to be forced out of his hiding place by the use of a police dog. From these circumstances a reasonable factfinder could have determined that [Kaiser] was a willing participant in the events despite his claim that he was an unwilling participant.

Id. at 636. After addressing and distinguishing the cases from other jurisdictions cited by Kaiser, the court looked to Kansas law and concluded that "[t]he Kansas legislature has not enacted a defense of withdrawal from aiding and abetting," and, therefore, the trial court did not err in failing to instruct the jury on withdrawal as a defense to aggravated robbery, aggravated kidnapping, and felony murder. Id. at 639. The court affirmed Kaiser's convictions and sentences on June 7, 1996.

On May 29, 1997, Kaiser filed a 28 U.S.C. § 2254 petition for habeas corpus relief, alleging (1) his convictions violated the due process clause of the Fourteenth Amendment because there was insufficient evidence to prove he was guilty of aiding and abetting aggravated robbery, aggravated kidnapping, and felony murder; and (2) he was denied his right to a fair trial and due process of law when the trial court refused to instruct the jury on his withdrawal defense. On December 16, 1999, the district court denied Kaiser's petition, concluding "a reasonable jury could have found beyond a reasonable doubt that Kaiser

5

knowingly participated in an unlawful venture and that he was a willful participant. The evidence is substantial and sufficient to support the jury's finding that [Kaiser] was guilty of aiding and abetting." 2254 ROA, Doc. 14 at 11. The district court then considered Kaiser's withdrawal argument and concluded that "the trial court's failure to give the requested instruction was not so fundamentally unfair that it denied [Kaiser] due process and a fair trial." Id. at 15.

## II.

On appeal, Kaiser argues there was insufficient evidence to convict him of the charged crimes and the trial court erred in not instructing the jury on withdrawal. Kaiser argues the state court's determination there was sufficient evidence to convict him was contrary to the clearly established federal law requiring the prosecution to prove his guilt beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). He also argues the state court's determination with respect to the trial court's failure to instruct the jury on withdrawal was contrary to the clearly established federal law guaranteeing him the right to present a defense. See Washington v. Texas, 388 U.S. 14, 18-19 (1967). Kaiser presented both of these arguments in his direct appeal.

28 U.S.C. § 2254(d) provides that a petitioner in the custody of a state court shall not be granted habeas relief

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has recently clarified the standard of review under § 2254(d)(1). The Court stated that under § 2254(d)(1) we are to apply constitutional principles which were established by the Supreme Court at the time the state conviction became final. Williams v. Taylor, 120 S. Ct. 1495, 1506-08 (2000). "Under the 'unreasonable application' clause . . ., a federal habeas court may grant the writ only if 'the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Thomas v. Gibson, ___ F.3d ___, 2000 WL 986587 at *4 (10th Cir. 2000) (quoting Williams, 120 S. Ct. at 1523 (O'Connor, J., concurring)).

*Sufficiency of evidence*

Kaiser contends there was insufficient evidence to convict him of aiding and abetting aggravated robbery, aggravated kidnapping, and felony murder, thereby violating his Constitutional right to due process.[1] See Winship, 397 U.S.

_____

[1]Kaiser does not challenge his conviction or sentence for unlawful use of a
(continued...)

at 364 (holding that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). The Kansas Supreme Court properly identified the "proof beyond a reasonable doubt" requirement for a criminal conviction. Our review, therefore, is limited to whether the court unreasonably applied that principle to the facts of this case. "Under § 2254(d)(1)'s 'unreasonable application' clause . . ., a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams , 120 S. Ct. at 1522 (O'Connor, J., concurring).

The State proceeded against Kaiser on an aiding and abetting theory for all counts except the unlawful possession of a weapon charge. Kansas statutes establish criminal liability for aiding and abetting crimes, stating that:

> (1) A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.
> (2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing or attempting to commit the crime intended.

[1](...continued)
weapon.

Kan. Stat. Ann. § 21-3205. To establish guilt for aiding and abetting the crimes of another, the State must prove beyond a reasonable doubt that Kaiser (1) "knowingly associated with the unlawful venture" and (2) "participated in a way which indicates willful furtherance of the success of the venture." Kelly v. Roberts, 998 F.2d 802, 808 (10th Cir. 1993) (citing State v. Burton, 681 P.2d 646, 652 (Kan. 1984), and State v. Huff, 681 P.2d 656, 659 (Kan. 1984)).

Kaiser argues his actions did not satisfy the requirements of 21-3205 and he lacked the specific intent to assist Schaeffer in the commission of aggravated robbery, aggravated kidnapping, and felony murder. More specifically, Kaiser argues the evidence did not establish that he knowingly associated himself with the unlawful venture or that he participated in a way that indicated he willfully furthered the success of the venture. We disagree. The Kansas Supreme Court's conclusion that the State proved Kaiser was guilty beyond a reasonable doubt was not an unreasonable application of the law to the evidence presented to the jury. The evidence showed that Kaiser fully participated in the decision to steal the car (the aggravated robbery). Kaiser chose the car to steal and voluntarily [2] got into the car with Schaefer after Schaefer forced the owner of the car into the trunk at gun point. Kaiser remained with Schaefer throughout the crime, even when he

[2]The jury was instructed on Kaiser's compulsion defense, but rejected the defense.

9

had several opportunities to leave. The evidence showed that Kaiser was more than a mere associate in the crime. Kaiser also argues he lacked the specific intent necessary to convict him of aiding and abetting. The evidence showed that Kaiser left with Schaefer, who was armed, and that Kaiser fully intended to steal the car. This crime of aggravated robbery led to the aggravated kidnapping and felony murder, which were reasonably foreseeable consequences of the aggravated robbery of the car. We conclude the Kansas Supreme Court's determination that the State proved Kaiser was guilty beyond a reasonable doubt was not unreasonable.

*Instruction on withdrawal*

Kaiser contends the trial court erred in refusing to instruct the jury that he withdrew from the criminal activity, thereby violating his Sixth Amendment and Fourteenth Amendment due process rights to present a defense. In disposing of Kaiser's direct appeal, the Kansas Supreme Court concluded that withdrawal is not a defense to a charge of aiding and abetting in Kansas. There is no indication in the Kansas Supreme Court opinion, however, that Kaiser raised a due process argument in connection with this claim. To the extent the due process issue "was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law de novo and its findings of fact, if any, for clear error." LaFevers v.

10

Gibson , 182 F.3d 705, 711 (10th Cir. 1999).

We use a highly deferential standard of review in reviewing the state trial court's refusal to give a defense instruction.      Tyler v. Nelson  , 163 F.3d 1222, 1227 (10th Cir. 1999).  "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law."   Id. (internal quotations omitted).  "Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because [a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."        Id. (internal quotations omitted).  To determine whether the trial court's refusal to give a withdrawal instruction violated Kaiser's federal constitutional right to due process requires us to first determine whether Kaiser was entitled to his requested instruction under Kansas law.     See id.

The trial court rejected Kaiser's proposed instruction that "[i]t is a defense that the defendant in good faith withdrew from the agreement and communicated the fact of such withdrawal to any party to the agreement before any party acted in furtherance of it."  ROA, Vol. IX at 150-51.  The trial court instructed the jury that:

> A person who, either before or during its commission,
> intentionally aids, abets, advises, counsels or procures another to

11

commit a crime with intent to promote or assist in its commission is criminally responsible for the crime committed regardless of the extent of the defendant's participation, if any, in the actual commission of the crime.

A person who intentionally aids, abets, advises, counsels, procures another to commit a crime is also responsible for any other crime committed in carrying out or attempting to carry out the intended crime, if the other crime was reasonably foreseeable.

Id. Vol. I at 25-26.

All crimes in Kansas are statutory. Kan. Stat. Ann. § 21-3102. The legislature has also specified defenses to criminal liability, including withdrawal as a defense to a charge of conspiracy. Kan. Stat. Ann. § 21-3302(b). However, the Kansas legislature has not enacted a defense of withdrawal for an aiding and abetting charge. The Kansas Supreme Court noted that "Kansas appellate courts have not recognized withdrawal as a common-law or court-created defense to aiding and abetting." Kaiser, 918 P.2d at 638.

Kaiser cites State v. Pratt, 876 P.2d 1390 (Kan. 1994), and argues withdrawal must be a recognized defense to aiding and abetting because the court in that case addressed a defendant's contention that he was entitled to a withdrawal instruction even though he was charged as an aider and abettor. In Pratt, the court rejected the defendant's withdrawal argument by concluding there was no evidence he had withdrawn from the criminal activity. The court did not specifically address the issue of whether withdrawal is a defense to aiding and abetting. Since Kaiser, the Kansas Supreme Court has repeated that "while

12

withdrawal is a defense to a charge of conspiracy, it is not a defense to a charge of aiding and abetting." State v. Speed , 961 P.2d 13, 32 (Kan. 1998); accord State v. Straughter , 932 P.2d 387, 389 (Kan. 1997). We conclude the Kansas Supreme Court did not violate Kansas law in concluding withdrawal is not a defense to aiding and abetting.

Even if we assume the Kansas court violated its own law, Kaiser must show this violation denied him due process under the Fifth and Fourteenth Amendments. "[T]he deprivation occasioned by the state's failure to follow its own law must be 'arbitrary in the constitutional sense'; that is, it must shock the judicial conscience." Aycox v. Lytle , 196 F.3d 1174, 1180 (10th Cir. 1999). Kaiser argues he has a due process right to a jury instruction on the theory of his case. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Gilmore v. Taylor , 508 U.S. 333, 343 (1993) (internal quotations omitted). Although the Supreme Court has invoked this principle in cases dealing with "the exclusion of evidence" or "the testimony of defense witnesses," it has never done so in a case involving "restrictions imposed on a defendant's ability to present an affirmative defense." Id. Indeed, in Gilmore , the Court rejected the defendant's argument that "the right to present a defense includes the right to have the jury consider it" because "such an expansive reading of our cases would make a nullity of the rule . . . that

13

instructional errors of state law generally may not form the basis for federal habeas relief." Id. at 344 (citing Estelle v. McGuire, 502 U.S. 62 (1991)).

The trial court did not prevent Kaiser from presenting the evidence he claims established withdrawal. See Chambers v. Mississippi, 410 U.S. 284, 294 (1973) (noting that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations"). The essence of Kaiser's withdrawal defense is that he did not willingly participate in or assist the crimes. This defense to an aiding and abetting charge equates to an assertion that the defendant is not guilty of the crimes charged. Kaiser does not contend that the jury was improperly instructed on aiding and abetting, on the elements of the crime charged, or on the State's burden of proof. We conclude that the failure of the trial court to give a withdrawal instruction did not deprive Kaiser of a fair trial. The district court did not err in denying Kaiser's § 2254 petition.

III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

14