No. 72,040

STATE OF KANSAS, *Appellee*, v. RACHELLE SHANNON, *Appellant*.

(905 P.2d 649)

426

Opinion filed October 27, 1995.

*Thomas Jacquinot*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Doyle Baker*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by the defendant, Rachelle Shannon, from her convictions for attempted first-degree murder and aggravated assault. The defendant also appeals the trial court's finding and its imposition of a one-year sentence for contempt of court.

The defendant testified at trial. She admitted shooting the victim and admitted that she intended to shoot at him. Her defense focused on whether she had the requisite intent to kill him.

She raises five issues on appeal. She contends the trial judge erred in (1) not instructing on other charges the defendant perceives to be lesser included offenses; (2) denying defendant's motion for change of venue; (3) both holding her in contempt of court and the length of sentence he imposed for contempt; (4) limiting the direct examination of her; and (5) abusing his discretion in denying the defense's request for individual voir dire.

## I. LESSER INCLUDED OFFENSES

The defendant's first complaint is that the trial court failed to instruct the jury on the lesser included offenses of attempted second-degree murder under K.S.A. 1994 Supp. 21-3402(b), attempted voluntary manslaughter under K.S.A. 1994 Supp. 21-3403(b), and attempted involuntary manslaughter under K.S.A. 1994 Supp. 21-3404(a) and (c).

K.S.A. 21-3107(3) requires the trial court to instruct the jury not only as to the crime charged but also as to all lesser included crimes of which the accused might be found guilty. This is an affirmative duty of the trial court and applies whether or not the defendant requests the instructions. *State v. Bowman*, 252 Kan. 883, 892, 850 P.2d 236 (1993). An instruction on a lesser included offense is required if there is substantial evidence upon which the defendant might reasonably have been convicted of the lesser offense. *State v. Mitchell*, 234 Kan. 185, 189, 672 P.2d 1 (1983). However, the duty "does not arise unless there is evidence supporting the lesser offense." *State v. Patterson*, 243 Kan. 262, 267, 755 P.2d 551 (1988). While there is some weighing of the evidence in this analysis, the weighing of evidence is not a retrial of the case. *State v. Dixon*, 252 Kan. 39, 43, 843 P.2d 182 (1992). The evidence supporting the lesser included offense must be viewed in the light most favorable to the defendant.

The relevant statutes are as follows:

"An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 1994 Supp. 21-3301(a).

"Murder in the second degree is the killing of a human being committed . . . unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 1994 Supp. 21-3402(b).

"Voluntary manslaughter is the intentional killing of a human being committed . . . upon an unreasonable but honest belief that circumstances existed that justified deadly force under K.S.A. 21-3211 . . . ." K.S.A. 1994 Supp. 21-3403(b).

"A person is justified in the use of force against an aggressor when and to the extent it appears to him and he reasonably believes that such conduct is necessary to defend himself or another against such aggressor's imminent use of unlawful force." K.S.A. 21-3211.

"Involuntary manslaughter is the unintentional killing of a human being committed:
   (a) Recklessly;

   . . . .

   (c) during the commission of a lawful act in an unlawful manner." K.S.A. 1994 Supp. 21-3404(a) and (c).

The defendant's argument concerning attempted involuntary manslaughter and attempted second-degree murder is flawed. The defendant points to her testimony where she expressed indifference as to whether the victim lived or died. She testified she wanted to stop the victim from performing abortions; she did not necessarily want to kill him. She reasons that this testimony demonstrates she had no specific intent to kill the victim. The flaw in defendant's argument is based not on her testimony, but rather on the fact that neither attempted involuntary manslaughter under K.S.A. 1994 Supp. 21-3404(a) or (c) nor attempted second-degree murder under K.S.A. 1994 Supp. 21-3402(b) are recognized offenses in Kansas.

In the recent case of *State v. Collins*, 257 Kan. 408, Syl. ¶ 4, 893 P.2d 217 (1995), this court held that the crime of attempted involuntary manslaughter does not exist in Kansas.

"The language of the attempt statute, K.S.A. [1994] Supp. 21-3301(a), requires that a person possess the *specific intent* to commit the crime. Therefore, to establish the crime of attempted involuntary manslaughter the person would be required to *specifically intend* to commit an *unintentional crime*. This is a logical impossibility. . . . We conclude that Kansas does not recognize the crime of attempted involuntary manslaughter." (Emphasis added.) 257 Kan. at 419.

Involuntary manslaughter requires an unintentional killing. K.S.A. 1994 Supp. 21-3404. The language of the involuntary manslaughter statute, K.S.A. 21-3404, has been amended in recent years. The version of the statute at issue in *Collins* (K.S.A. 21-3404) differs from the version at issue in this case (K.S.A. 1994 Supp. 21-3404). However, both the former and the present versions require an unintentional killing, and it was the attempt to commit an unintentional act that *Collins* found impossible.

The *Collins* analysis equally applies to attempted second-degree murder under K.S.A. 1994 Supp. 21-3402(b). In the past, this court

has recognized "attempted second-degree murder" as a lesser included offense of attempted first-degree murder. See *State v. Dixon*, 252 Kan. at 41-42. Significantly, however, such recognition was based on the former language of the second-degree murder statute. K.S.A. 21-3402 defined second-degree murder as "the malicious killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony." Effective July 1, 1993, K.S.A. 21-3402 was amended and second-degree murder is now defined alternatively as a killing committed intentionally (subsection [a]) or a killing committed "unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life" (subsection [b]). K.S.A. 1994 Supp. 21-3402. Attempted second-degree murder under subsection (a) is a lesser included offense of attempted first-degree murder.

However, the defendant believes she is entitled to an instruction on attempted second-degree murder under subsection (b), not (a). Subsection (b) requires an unintentional killing. K.S.A. 1994 Supp. 21-3402(b). An "attempt" to commit the crime of "second-degree murder" under K.S.A. 1994 Supp. 21-3402(b) would require the specific intent to commit an unintentional killing. This is exactly what we found impossible in *Collins*.

The trial court did not err in failing to instruct the jury on attempted second-degree murder or attempted involuntary manslaughter.

The defendant's argument concerning attempted voluntary manslaughter is also flawed. The defendant's theory of attempted voluntary manslaughter is under K.S.A. 1994 Supp. 21-3403(b)— the intentional killing committed with an unreasonable but honest belief that the circumstances justified deadly force to defend another against an aggressor's imminent use of *unlawful* force. The defendant reasons that she had an honest, though unreasonable, belief that deadly force was necessary to protect unborn children from the victim's acts of abortion. However, there is no evidence in the record that the defendant honestly believed the victim's actions in performing abortions were unlawful. In fact, the defendant testified that "our government refuses to do its job and protect the

lives of the babies, so somebody has to." Such language demonstrates the defendant recognized that performing abortions was not a use of unlawful force. The district court was only required to give an instruction on attempted voluntary manslaughter if there was some evidence upon which the jury reasonably could have convicted the defendant of the offense. There was no such evidence here, and the instruction was not required.

The trial court did instruct the jury on the lesser included offense of aggravated battery. No other lesser included offense instruction was appropriate. There was no error on this issue.

## II. MOTION FOR A CHANGE OF VENUE

Next, the defendant asserts that the district court abused its discretion in denying her motion for a change of venue. K.S.A. 22-2616(1) states that the trial court, upon motion of the defendant, shall transfer the case to another county or district "if the court is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he [or she] cannot obtain a fair and impartial trial in that county."

The defendant made her motion for a change of venue several months prior to trial, and the court held a hearing on the motion several days before trial. The court received into evidence copies of several articles published in the Wichita Eagle. These articles detailed the defendant's involvement in the victim's shooting, her past protesting activities and arrests, and opinions which other advocates had about her actions. Most of the information in the articles was provided by the defendant herself and, according to the defendant's trial testimony, the articles were accurate as to information she had provided to the author. After hearing argument, the trial court denied the defendant's motion for a change of venue.

Jury selection took one-and-one-half days. Thirty-six jurors and three alternate jurors were qualified for cause. During this process, eight venirepersons were excused for cause. Of these eight, five were excused because they could not set aside preconceived notions about the case or because they could not presume the defendant was innocent. The other three were excused for reasons not related to pretrial publicity. Therefore, of 47 venirepersons ques-

tioned, only 5 had been prejudicially affected by pretrial publicity. Most of the 39 venirepersons qualified for cause had been exposed to some pretrial publicity. However, each one was questioned extensively about whether he or she had formed an opinion about the case. Each one stated unequivocally that he or she had not formed an opinion or would be able to set aside that opinion and would presume the defendant innocent, in order to decide the case based solely on the evidence and the law.

After the completion of voir dire, the defendant made no motion to discharge the jury based on the effect of pretrial publicity, and she did not renew her motion for a change of venue.

This court recently stated the standard of review concerning the denial of a change of venue:

"The determination of whether to change venue is entrusted to the sound discretion of the trial court; its decision will not be disturbed on appeal absent a showing of prejudice to the substantial rights of the defendant. The burden is on the defendant to show prejudice exists in the community, not as a matter of speculation, but as a demonstrable reality. The defendant must show that such prejudice exists in the community that it was reasonably certain he or she could not have obtained a fair trial." *State v. Butler*, 257 Kan. 1043, Syl. ¶ 2, 897 P.2d 1007 (1995).

See *State v. Lumbrera*, 252 Kan. 54, Syl. ¶¶ 2, 3, 845 P.2d 609 (1992); *State v. Grissom*, 251 Kan. 851, 927-29, 840 P.2d 1142 (1992).

In *State v. Ruebke*, 240 Kan. 493, 500-01, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987), this court stated:

"Media publicity alone has never established prejudice per se. The trial court had no difficulty in finding from the jury panel jurors who stated that they could render a fair and impartial verdict. The small number of jurors dismissed by the court for cause and the effort of the judge to press no one into jury service who showed the slightest hint of prejudice established that there was no abuse of discretion in denying a change of venue. Unless we are to assume that (1) the jurors selected to try the defendant violated their oath when they swore that they could give the defendant a fair trial or (2) an individual can commit a crime so heinous that news coverage generated by that act will not allow the perpetrator to be brought to trial, the defendant has not established substantial prejudice. There was no abuse of discretion on the part of the court in denying the defendant's motion for change of venue."

See *Butler*, 257 Kan. at 1059.

The defendant's argument that some of the jurors had come to a conclusion that she was guilty before the evidence was even presented in this case is entirely speculative. Each venireperson was directly questioned about how extensively he or she had read or heard about the case. All venirepersons who indicated some knowledge about the case, except those excused for cause, unequivocally stated they had not formed an opinion about the case or they could set aside any opinion formed. Such venirepersons also asserted they could be fair and impartial and would decide the case based on the evidence. Nothing in the record suggests that any of the jurors were untruthful about their ability to set aside preconceived opinions and decide the case based solely on the evidence at trial.

The defendant has failed to meet her burden to show that her rights to a fair trial were substantially prejudiced by the pretrial publicity. The trial court did not abuse its discretion in denying the defendant's motion for a change of venue. See *State v. Bierman*, 248 Kan. 80, 87-88, 805 P.2d 25 (1991).

## III. REQUEST FOR INDIVIDUAL VOIR DIRE

The defendant also argues that the trial court erred in denying her motion to voir dire the venire individually. The defendant filed the motion several months before trial, and the trial court heard arguments on the motion two-and-one-half months before trial. At the trial court hearing, the defendant argued that, because the case concerned the abortion debate, there was a risk of contaminating the entire jury panel if some of the potential jurors held an extreme belief on the issue. Individual voir dire, according to the defendant, would serve judicial economy and insure a fair trial.

The trial court denied the defendant's motion for individual voir dire, finding no need at that time to question jurors individually. The court did indicate that if there were specific questions which might cause problems, those could be conducted on an individual basis. Moreover, the court opined that the motion was premature because counsel had not indicated which questions might be sensitive. The defendant made no additional effort to question jurors individually during voir dire.

On appeal, the defendant's argument is closely related to her argument concerning change of venue. She asserts that she was unable to question jurors about the allegations by the media that she was involved in other alleged illegal anti-abortion activities. If she had done so, she reasons, such a question would have alerted the entire panel to this prejudicial information. She contends that individual voir dire would have given her an opportunity to elicit precisely what the potential jurors knew about the case and how the information would affect their judgment, thus giving her a more honest view about how they really felt. Moreover, she suggests that the potential jurors were more likely to state they could set aside preconceived opinions about the case after having seen other jurors excused for cause when such excused jurors stated they were unable to set aside their opinions.

The purpose of the voir dire examination is to enable the parties to select competent jurors who have no bias, prejudice, or partiality. The nature and scope of the voir dire examination lies within the sound discretion of the trial court. See *Lumbrera*, 252 Kan. at 59; *State v. Haislip*, 237 Kan. 461, 485, 701 P.2d 909, *cert. denied* 474 U.S. 1022 (1985). Likewise, the manner in which voir dire is conducted must lie within the sound discretion of the trial court.

The trial court left open the possibility of permitting some individual voir dire if the defendant demonstrated a need arose during jury selection. The defendant did not renew her motion for individual voir dire either immediately before trial or during voir dire. The argument on appeal is speculative. There is no showing that counsel was prevented from adequately inquiring into the awareness of or influence from pretrial publicity due to the risk such questions would taint the rest of the venire. The comment of one juror that she had read that the defendant confessed did not prejudicially taint the rest of the venire. *Cf. Lumbrera*, 252 Kan. at 61 (trial court should have modified voir dire procedure when risk of contamination through juror comments became a reality rather than just a possibility proposed by defense counsel). Moreover, there is no showing that the venirepersons would have somehow been "more honest" had they been examined in private. The

trial court did not abuse its discretion in denying the defendant's motion for individual voir dire.

## IV. LIMITING THE DEFENDANT'S TESTIMONY

The defendant's fourth claim of error is that the trial court infringed upon her constitutional rights to testify and present a defense by limiting her testimony on direct examination. The defendant referred to the victim as a "late-term abortionist" and wanted to testify about procedures used for terminating late-stage pregnancies. The trial court sustained the State's objection that the testimony was irrelevant. The court also noted that the defendant was not competent to testify about such medical procedures. The court did rule that the defendant could testify about her motive.

The defendant argues that the testimony was necessary to explain her state of mind. She reasons that an explanation of the victim's act illustrates why she may have been able to shoot him without a specific intent to kill him.

The defendant's explanation of her motive for shooting the victim did not require testimony concerning his abortion procedures. The defendant was permitted to testify the victim performed abortions. She testified abortion in the late stages of pregnancy is no different than abortion at any stage of pregnancy; it is all "murder." In her opinion, every method of abortion is horrible. She also indicated that she did not know why she selected the victim as her target. Therefore, it was not the victim's particular procedure for performing abortions, or even the fact that he performed abortions during the late stages of pregnancy, that gave rise to her motive; it was the fact that he performed abortions at all.

Testimony concerning the victim's abortion procedures was not relevant in this case. The trial court did not abuse its discretion in limiting the defendant's testimony on direct examination.

## V. CONTEMPT OF COURT AND SENTENCE

The defendant's final argument on appeal concerns the trial court's finding that she was in contempt of court. During cross-examination, the State asked the defendant from whom she had purchased the gun she used in the shooting. The defendant refused

to answer the question, even after being ordered to by the trial court. The defendant only indicated that she went through several people to get the gun and would not give the names of any of the ones she knew. Therefore, the trial court found her in contempt of court. Following sentencing, the trial court imposed a one-year sentence for the direct contempt of court. The contempt sentence was made consecutive to the sentence imposed for the attempted first-degree murder and aggravated assault convictions.

Contempt of court may be direct or indirect, criminal or civil. Direct contempt is committed in the presence of a sitting court or in the presence of a judge sitting in chambers. All other contempts are indirect. K.S.A. 20-1202. The contempt here was direct contempt. A judgment of contempt lies within the sound discretion of the trial court before whom the matter is pending. Such judgment will not be reversed absent an abuse of discretion. *Edmiston v. First Nat'l Bank of Holcomb*, 242 Kan. 13, 15, 744 P.2d 829 (1987).

The defendant's argument on appeal relates not to the court's finding of contempt but rather to due process considerations which the trial court allegedly violated in its imposition of a one-year sentence for the contempt. She claims that the due process components of notice and an opportunity to be heard were violated. The defendant asserts she was entitled to a jury trial by virtue of the imposition of a one-year sentence. See *Codispoti v. Pennsylvania*, 418 U.S. 506, 516-17, 41 L. Ed. 2d 912, 94 S. Ct. 2687 (1974). She also asserts that the one-year sentence imposed was arbitrary, was not rationally related to her conduct, and was cruel and unusual punishment.

The State concedes that a one-year sentence for the defendant's contempt was inappropriate. The State concedes that a jury trial is required in cases of contempt for serious offenses, which are those carrying a sentence in excess of six months. However, a jury trial is not required in a case of contempt for petty offenses, which are those carrying a sentence of six months or less. See *Codispoti*, 418 U.S. 506; *Bloom v. Illinois*, 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477 (1968). Because the defendant was not afforded a jury trial, the State agrees that the maximum sentence which could be imposed was six months. The State suggests this court can remedy

the error by remanding the case to the trial court for the imposition of a sentence for contempt of six months or less.

A defendant has the right to a jury trial where, as here, the sentence imposed for contempt of court exceeds six months. *Codispoti*, 418 U.S. 506. Therefore, the citation for contempt is reversed and the sentence vacated. The case is remanded to the trial court with directions to impose a sentence for the contempt citation not to exceed six months or to grant the defendant a jury trial on the contempt issue.

The defendant's convictions for attempted first-degree murder and aggravated assault are affirmed. The conviction and sentence for contempt is reversed and the case remanded to the trial court for compliance with the directions contained herein.