(927 P.2d 503)
No. 74,056

STATE OF KANSAS, *Appellee,* v. BRIDGET POPE, *Appellant.*

Opinion filed November 22, 1996.

*Randall L. Hodgkinson,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Timothy J. Chambers*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before MARQUARDT,, P.J., ROYSE, J., and CHARLES E. WORDEN, District Judge, assigned.

MARQUARDT, J.: The State charged Bridget Pope with intentional second-degree murder or unintentional but reckless second-degree murder in the death of 16-year-old Tracy L. Horyna. A jury found Pope guilty of intentional second-degree murder, and the district court sentenced Pope to 141 months in prison. Pope appeals both her conviction and sentence.

Horyna and Mistyn Stewart attended the same high school and were close friends. Michelle Smyres, a friend of Horyna and Stewart, telephoned Stewart's house and asked to speak to Horyna. Smyres told Horyna that Hilleary McEhlheny wanted to meet Horyna at McEhlheny's aunt's house "to talk." McEhlheny was upset with Horyna because Horyna had kissed McEhlheny's ex-boyfriend. Horyna indicated to Stewart that she did not trust McEhlheny and that she was not going to the meeting.

A group of people met at Pope's house and Pope talked about damaging Horyna's car using a knife, bat, and crowbar. Part of the group left and went to McEhlheny's aunt's house to wait for Horyna. When Horyna did not show up, McEhlheny and some of her friends went looking for Horyna. Pope showed McEhlheny's best friend, Kim Miller, a knife and said that she "was going to make it where Tracy wasn't very pretty any more."

Later that evening, as Horyna was driving around town with Stewart, they noticed that a car was following them. McEhlheny was driving the pursuing car, flashing the headlights and honking the horn. Horyna pulled her car off the road and parked. McEhlheny then pulled her car in front of Horyna's car and stopped.

McEhlheny went back to Horyna's car and started yelling at her through the open window. Pope and another girl, Angela Chaffin, went back to Horyna's car and stood by McEhlheny. Stewart saw that Pope was holding a knife in her hand. Pope asked McEhlheny, "Are you done?" and then told McEhlheny to get back in the car.

As McEhlheny turned to leave, Pope reached into Horyna's car, stabbing her in the heart. As Horyna struggled with Pope, Horyna's car was knocked out of neutral and into drive. Pope ran back to McEhlhany's car. Horyna then drove about a block before she lost consciousness. A forensic pathologist testified that Horyna died from a loss of blood due to a stab wound to the chest. The knife had gone through Horyna's sternum into her heart.

Chaffin testified that when she, Pope, and McEhlheny returned to their car, Pope stated that she had stabbed Horyna in the leg and then started to laugh. April Bass, a friend of Pope, testified that later that evening Pope stated, "I cut her up real good."

## INTENT

Pope argues that intentional second-degree murder requires intent to kill and that the record does not contain sufficient evidence that Pope intended to kill Horyna.

The issue of the requisite intent for second-degree murder requires this court to interpret K.S.A. 21-3402(a). This issue raises a question of law over which this court has unlimited review. See *State v. Caldwell*, 21 Kan. App. 2d 466, 470, 901 P.2d 35, *rev. denied* 258 Kan. 859 (1995).

"The standard of review when the sufficiency of the evidence is challenged on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found defendant guilty beyond a reasonable doubt." *State v. Pratt*, 255 Kan. 767, 768, 876 P.2d 1390 (1994).

"Murder in the second degree is the killing of a human being committed: (a) Intentionally; or (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-3402. See *State v. Jones*, 257 Kan. 856, 872, 896 P.2d 1077 (1995).

Prior to July 1, 1993, second-degree murder was defined as "the malicious killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony." K.S.A. 21-3402 (Ensley 1988); *State v. Shannon*, 258 Kan. 425, 429, 905 P.2d 649 (1995).

In *State v. Hill*, 242 Kan. 68, 81-83, 744 P.2d 1228 (1987), the court held that the prior version of the second-degree murder statute required a showing that the defendant possessed the specific intent to kill a human being before the defendant could properly be convicted of second-degree murder. The *Hill* court also noted that there is a distinction between intentionally shooting and intentionally killing someone. 242 Kan. at 82.

The new statute has not removed the specific intent requirement for intentional second-degree murder convictions under K.S.A. 21-3402(a) ("Murder in the second degree is the killing of a human being committed . . . [i]ntentionally."). See *Shannon*, 258 Kan. at 428-29.

"Specific intent as an element of the crime charged is normally a question of fact for the finder of fact to determine and may be shown by acts, circumstances, and inferences reasonably deducible therefrom and need not be established by direct proof." *Pratt*, 255 Kan. at 769.

" ' "Intent is a state of mind existing at the time a person commits an offense and it may be shown by acts, circumstances and inferences deducible therefrom." [Citations omitted.]' A conviction of even the gravest offense may be sustained by circumstantial evidence. [Citation omitted.]" *State v. Scott*, 250 Kan. 350, 362, 827 P.2d 733 (1992).

Thus, while a conviction for intentional second-degree murder requires proof that the defendant intentionally killed a human being, this specific intent may be proven by the acts of the defendant and the inferences deducible from those acts. K.S.A. 21-3402(a); *Shannon*, 258 Kan. at 428-29; *Pratt*, 255 Kan. at 769.

Pope stabbed Horyna in the heart. Pope stated to the police that while she intended to stab Horyna, she did not intend to kill her. The jury heard testimony from the police officers regarding Pope's statements; however, the jury could have reasonably deduced from Pope's act of stabbing Horyna that she intended to kill her. There is sufficient evidence in the record to support a reasonable inference that Pope intentionally killed Horyna. See *Pratt*, 255 Kan. at 769.

Pope argues that the district court stated that the definition of intentional second-degree murder under K.S.A. 21-3402(a) does not require proof of a specific intent to kill. The district court made several statements indicating its view that intentional second-degree murder requires "that someone does an intentional act and as a result of that somebody dies." Regardless of the district court's statement, the district court never expressed its view of the law to the jury. The statements of the district court were made either out of the presence of the jury or after the verdict had been rendered during post-trial motions and sentencing.

The jury instructions correctly stated that to establish a charge of intentional second-degree murder, the State must prove that "the defendant intentionally killed Tracy Horyna." See PIK Crim. 3d 56.03. The jury instructions also defined intentional as "conduct that is purposeful and willful and not accidental." See PIK Crim. 3d 54.01-A. The district court correctly instructed the jury on the intent element of intentional second-degree murder.

Pope also argues that the district court failed to correctly answer the jury's question regarding specific intent.

After deliberating approximately 2 hours, the jury submitted the following question to the district court:

"Does the [State] have to show intent to kill to prove the crime of murder in the second degree by an intentional killing, even for a split second[?]"

The district court gave the following answer:

"The Court will instruct you to re-read the elements the state must prove for murder in the second degree by an intentional killing. You should also re-read the elements instruction for murder in the second degree, unintentional killing. The definition of intentional is set forth in Instruction Number 11. You should re-read that instruction, and Instruction Number 12."

K.S.A. 22-3420(3) mandates that a district court respond to a jury's request for further information "as to any part of the law or evidence arising in the case." The manner and extent of the response, however, rest in the sound discretion of the district court. *State v. Boyd*, 257 Kan. 82, 87, 891 P.2d 358 (1995).

Pope argues that by not answering the jury's question with a "yes," the district court failed to instruct the jury on the intent

element of second-degree murder. As we have previously noted, the district court correctly instructed the jury on the intent element of second-degree murder. The district court responded to the jury's question by instructing it to re-read the instructions. In answering the jury's question, the district court did not abuse its discretion.

Pope argues that the response given by the district court unconstitutionally shifted the burden of proof to Pope. In making this argument, Pope challenges PIK Crim. 3d 54.01, which provides:

"Ordinarily, a person intends all of the usual consequences of (his)(her) voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

At trial, PIK Crim. 3d 54.01 was given as Instruction Number 12.

The Kansas Supreme Court has consistently upheld the constitutionality of PIK Crim. 3d 54.01. See, e.g., *State v. Stone*, 253 Kan. 105, 107-08, 853 P.2d 662 (1993). The challenged instruction clearly states that the burden of proof never shifts to the defendant. Pope's argument lacks merit.

Pope argues that the unintentional second-degree murder statute, K.S.A. 21-3402(b), is unconstitutionally vague. Pope was not convicted of unintentional second-degree murder. In *State v. Zimmer*, 19 Kan. App. 2d 617, 618, 873 P.2d 1381 (1994), the court noted the general rule that appellate courts decide only actual controversies and decline to give opinions on moot questions or abstract propositions. This issue does not present an actual controversy that requires adjudication.

## LESSER INCLUDED OFFENSES

Pope argues that the district court erred in refusing to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter.

A district court is required to instruct the jury not only as to the crime charged, but also "as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced." K.S.A. 21-3107(3); *State v. Bailey*,

256 Kan. 872, 886, 889 P.2d 738 (1995). "An instruction on a lesser included offense is required if there is substantial evidence upon which the defendant might reasonably have been convicted of the lesser offense." *Shannon*, 258 Kan. at 427. Evidence supporting the instruction of a lesser included offense may be presented by either the defendant or the State. *State v. Coleman*, 253 Kan. 335, 354, 856 P.2d 121 (1993). An instruction on a lesser included offense is not required if the evidence at trial excludes a theory of guilt on the lesser offense. *State v. Tran*, 252 Kan. 494, 506, 847 P.2d 680 (1993).

When reviewing a district court's failure to give a specific instruction, this court views the evidence in the light most favorable to the party requesting the instruction. *Scott*, 250 Kan. at 357.

### Voluntary Manslaughter

Voluntary manslaughter includes the intentional killing of a human being upon a sudden quarrel or in the heat of passion. K.S.A. 21-3403(a); *Bailey*, 256 Kan. at 886.

In *Bailey*, 256 Kan. at 886, the court stated:

" 'In order for a defendant charged with murder to be entitled to a jury instruction on voluntary manslaughter because he acted in the heat of passion, his emotional state of mind must exist at the time of the act and it must have arisen from circumstances constituting sufficient provocation.'

" 'The test of the sufficiency of the provocation is objective, not subjective. The provocation, whether it be "sudden quarrel" or some other form of provocation, must be sufficient to cause an ordinary man to lose control of his actions and his reason. In applying the objective standard for measuring the sufficiency of the provocation, the standard precludes consideration of the innate peculiarities of the individual defendant.' *State v. Guebara*, 236 Kan. 791, Syl. ¶¶ 2, 3, 696 P.2d 381 (1985)."

Mere words or gestures, however insulting, do not constitute adequate provocation, but insulting words when accompanied by assault may constitute adequate provocation. *Hill*, 242 Kan. at 74.

During the confrontation, Horyna never left her vehicle and never threatened Pope or anyone else. In fact, the argument was between Horyna and McEhlheny. There is no evidence of sufficient provocation to establish voluntary manslaughter. Thus, the

district court did not err in refusing to instruct the jury on voluntary manslaughter.

## Involuntary Manslaughter

Involuntary manslaughter is the unintentional killing of a human being committed "recklessly." K.S.A. 21-3404(a). Under the prior versions of the applicable statutes, involuntary manslaughter had been held to be a lesser included offense of second-degree murder. See *Tran*, 252 Kan. at 506.

K.S.A. 21-3201(c) defines reckless conduct as "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'wantonness' are included within the term 'recklessness' as used in this code."

"[F]or conduct to be 'reckless,' it must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended." *Duckers v. Lynch*, 204 Kan. 649, 653, 465 P.2d 945 (1970).

Unintentional second-degree murder requires reckless conduct "manifesting extreme indifference to the value of human life," K.S.A. 21-3402(b), while involuntary manslaughter requires "a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger," K.S.A. 21-3201(c). It is the *extreme* indifference to the value of human life that distinguishes unintentional second-degree murder from involuntary manslaughter. See Model Penal Code § 210.2, comment 4 (1980). The common-law distinctions between depraved-heart murder and manslaughter are helpful in distinguishing the current statutory crimes.

Pope correctly notes that the district court based its refusal to instruct the jury on involuntary manslaughter on the lack of sufficient provocation. Because provocation is not an issue in evaluating whether the jury should be instructed on *involuntary* manslaughter, the district court relied on an improper ground. However, if a district court's decision is correct, notwithstanding that the district

court relied upon an improper ground, it will be upheld by this court. See *State v. Wilburn*, 249 Kan. 678, 686, 822 P.2d 609 (1991).

In Pope's second version of the tragic events to the police, she stated that Horyna had kicked her in the face and that she then swung at Horyna, forgetting that she had a knife in her hand. Pope later contradicted this statement when she told the police that she had intentionally stabbed Horyna, but that she did not intend to kill her. Every other witness to the confrontation testified that Horyna never struck out at anyone in any way.

"Where there is no substantial evidence applicable to the lesser degrees of the offense charged, and all of the evidence taken together shows that the offense, if committed, was clearly of the higher degree, instructions relating to the lesser degrees of the offense are not necessary." *State v. Gibbons*, 256 Kan. 951, 955, 889 P.2d 772 (1995).

All of the evidence taken together shows that the offense was clearly of the higher degree. Thus, the district court did not err in refusing to instruct the jury on involuntary manslaughter.

## FIFTH AND SIXTH AMENDMENT RIGHTS

Pope argues that the district court erred in failing to suppress certain statements that she made to the police.

Initially, Pope's appellate counsel candidly admits that Pope's trial counsel failed to contemporaneously object to the admission of these statements at trial. "The erroneous admission of evidence may not be raised on appeal absent a timely objection to the evidence, so stated as to make clear the specific ground of the objection. K.S.A. 60-404." *State v. Sutton*, 256 Kan. 913, 924, 889 P.2d 755 (1995). Thus, this issue is not properly before this court.

Additionally, it is clear from the record of the suppression hearing that the police properly informed Pope of her right to counsel. Pope argues that she "was not advised that she could have an attorney appointed, even during the early morning hours, to be present during the interview." The statement of *Miranda* rights that was read to and initialed by Pope stated that she had the right to

talk to an attorney and to have an attorney present while she was being questioned. This argument lacks merit.

## MISSOURI JUVENILE ADJUDICATIONS

Pope argues that her prior Missouri juvenile adjudications should not have been used in calculating her criminal history under the Kansas Sentencing Guidelines Act (KSGA). Pope argues that the inclusion of the Missouri juvenile adjudications violates the Full Faith and Credit, Due Process, and Ex Post Facto Clauses of the United States Constitution. The due process and ex post facto arguments are controlled by *State v. LaMunyon*, 21 Kan. App. 2d 281, Syl. ¶¶ 1, 3, 898 P.2d 1182 (1995), *aff'd* 259 Kan. 54, 911 P.2d 151 (1996) (holding that juvenile adjudications may properly be used in determining criminal history score). The full faith and credit argument lacks merit.

At sentencing, both Pope and defense counsel agreed that the criminal history shown in the presentencing report was accurate. Additionally, Pope concedes that she did not object to the use of the Missouri juvenile adjudications at that time.

K.S.A. 21-4715(a) provides: "The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge."

K.S.A. 21-4721(e) provides: "In any appeal, the appellate court may review a claim that . . . the sentencing court erred in either including or excluding recognition of a prior conviction or juvenile adjudication for criminal history scoring purposes."

This court has jurisdiction to consider this issue notwithstanding Pope's failure to object to her criminal history at sentencing.

K.S.A. 21-4710(d) provides that certain juvenile adjudications may be included in calculating a defendant's criminal history when determining a sentence under the KSGA. K.S.A. 21-4711(f) provides that out-of-state juvenile adjudications will be treated as juvenile adjudications in Kansas.

Pope's due process challenge is based on the lack of the right to a jury trial for juvenile adjudications. See *LaMunyon*, 259 Kan. at 62 (noting that a juvenile has no constitutional right to a jury trial).

The *LaMunyon* court rejected this argument, holding that juvenile adjudications are constitutional and could, therefore, be used in calculating a defendant's criminal history. 259 Kan. at 65. *LaMunyon* controls this argument.

The *LaMunyon* court also held that "the KSGA does not operate retrospectively to punish the activity which occurred prior to the effective date of the KSGA and therefore does not violate the prohibition against ex post facto laws." 259 Kan. at 67. *LaMunyon* controls this argument as well.

Pope's argument that inclusion of her Missouri juvenile adjudications in her criminal history score violates the Full Faith and Credit Clause was not an issue addressed by the *LaMunyon* court, and the State did not respond to this argument.

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. The general rule is that a judgment rendered by a court of one state is entitled to recognition in the courts of another state to the same extent as it has by law or usage in the courts of the state where the judgment was rendered. *Hicks v. Hefner*, 210 Kan. 79, 82, 499 P.2d 1147 (1972); *Boyce v. Boyce*, 13 Kan. App. 2d 585, 587, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989).

Mo. Rev. Stat. § 211.271 (1994) provides:

"1. No adjudication by the juvenile court upon the status of a child shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction nor shall the child be found guilty or be deemed a criminal by reason of the adjudication.

. . . .

"3. After a child is taken into custody . . . all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court, are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter."

See *State v. Miner*, 657 S.W.2d 332, 333 (Mo. App. 1983) (holding that psychiatrist's testimony regarding defendant's arrest at age 14 was reversible error).

The flaw in Pope's argument is that the district court sentenced Pope under Kansas law rather than Missouri law. Kansas law allows juvenile adjudications to be used in calculating a defendant's criminal history. K.S.A. 21-4710(d).

The Full Faith and Credit Clause "does not require a state to apply another state's law in violation of its own legitimate public policy." *Head v. Platte County, Mo.*, 242 Kan. 442, 446, 749 P.2d 6 (1988) (citing *Nevada v. Hall*, 440 U.S. 410, 422, 59 L. Ed. 2d 416, 99 S. Ct. 1182, *reh. denied* 441 U.S. 917 [1979]). Kansas has a legitimate public policy interest in considering a defendant's juvenile offenses when sentencing that defendant for a criminal conviction. See *LaMunyon*, 259 Kan. at 60 (noting that the Kansas Legislature permitted consideration of juvenile adjudications in sentencing adult offenders prior to the adoption of the KSGA). The Full Faith and Credit Clause does not prevent the inclusion of Missouri juvenile adjudications in calculating Pope's criminal history score.

Affirmed.