No. 81,491

In the Matter of the Administration of Justice in the Eighteenth Judicial District.

No. 81,497

THE CITY OF WICHITA, *et al.*, *Petitioners*, v. MIKE HILL, SEDGWICK COUNTY SHERIFF, *Respondent*.

No. 81,509

THE CITY OF WICHITA, *et al.*, *Petitioners*, v. THE HONORABLE PAUL BUCHANAN, CHIEF JUDGE, EIGHTEENTH JUDICIAL DISTRICT, *Respondent*.

No. 81,632

In the Matter of the Habeas Corpus Petition of WILLIAM W. RUSS, JR., *et al.*

(9 P.3d 28)

Opinion filed July 26, 2000.

*Sharon L. Dickgrafe*, assistant city attorney, argued the cause, and *Gary E. Rebenstorf*, city attorney, and *Blaise Plummer*, assistant city attorney, were with her on the briefs for petitioners/appellants.

*Ed L. Randels*, assistant county counselor, argued the cause, and *Rekha Sharma-Crawford*, assistant county counselor, was with him on the briefs for respondent/appellee Hill.

*John R. Dowell*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the briefs for respondent/appellee Buchanan.

*Donald L. Moler, Jr.*, executive director, *Kimberly A. Gulley*, and *Larry A. Kleeman,* of Topeka, were on the brief for *amicus curiae* League of Kansas Municipalities.

*Warner Eisenbise*, of Wichita, was on the brief for *amicus curiae* Kansas Association of Criminal Defense Lawyers.

*Jim Lawing*, of Wichita, was on the brief for *amicus curiae* American Civil Liberties Union of Kansas and Western Missouri.

The opinion of the court was delivered by

ABBOTT, J.: These four consolidated cases involve a dispute between the City of Wichita (City) and the judges of the Wichita Municipal Court on one side, and Sedgwick County District Judge Paul Buchanan, Chief Judge of the Eighteenth Judicial District, and Sedgwick County Sheriff Mike Hill on the other.

At all times pertinent, the prisoners of the City were held in the Sedgwick County Jail at the county's expense. Pending completion of new jail facilities, frequent crises were occurring concerning the jail exceeding its maximum capacity.

In case No. 81,491, Judge Buchanan issued a show cause order on his own motion, held two hearings, and ordered the release of approximately 71 municipal court prisoners on their city charges. He concluded their incarceration was for nonpayment of fines and costs and that their incarceration amounted to being held for the payment of a debt to the City in violation of § 16 of the Kansas Constitution Bill of Rights.

A few days later, William W. Russ, Jr., an inmate in the jail by reason of his failure to pay fines imposed by the municipal court, completed an inmate request form and directed it to Judge Buchanan. Russ stated in part: "I would like a reconsideration to an OR bond, so I can secure gainful employment, and pay the fines levied by the municipal court."

Judge Buchanan directed that the request be filed as a habeas corpus action and it became case No. 81,632. Judge Buchanan ordered Russ released on the city charges (and held him in jail on pending felony charges). Later, on his own motion, Judge Buchanan added nine other prisoners as petitioners in that case. As to those nine prisoners, he modified what appeared to be a "cash-only" bond condition regarding the incarceration of Robert E.

Martin, Jr., found the petition moot as to six of the remaining eight prisoners, and denied the petition as to the two others.

The two other cases (No. 81,497, naming Sheriff Hill a respondent, and No. 81,509, naming Judge Buchanan a respondent) are original proceedings in mandamus filed in the Supreme Court by the City. These cases mainly seek to prevent Sheriff Hill from releasing city prisoners being held on a pay-before-release status, without the consent of the Wichita Municipal Court or without satisfaction of their bond conditions, and to prevent Judge Buchanan from unilaterally ordering the release of such pay-before-release prisoners.

This dispute concerns (1) Judge Buchanan's conclusions regarding the procedures used by the judges of the Wichita Municipal Court to incarcerate, and hold on a pay-before-release basis, persons who have failed to pay fines and costs imposed for violations of ordinances of the City or, apparently as in most if not all of the cases involved here, persons who have failed to pay their fines and costs and also have subsequently failed to appear at a prescribed time-to-pay docket as personally ordered on a previous occasion by one of the municipal court judges; and (2) Judge Buchanan's orders releasing certain of those persons from the jail and/or from their city charges and modifying what Judge Buchanan presumed to be the cash-only bond condition of Martin.

The Supreme Court appointed the Honorable Stephen D. Hill, Chief Judge of the Sixth Judicial District, a Commissioner of the Supreme Court, to delineate and simplify the issues in these cases and to hear testimony and make findings of fact necessary for a proper resolution of the issues. The report of the Commissioner was filed on April 7, 1999.

## I. JURISDICTION

This issue mainly concerns Judge Buchanan's release of the 71 prisoners, his orders regarding Martin, and his rulings as to 8 inmates, other than Martin, whom Judge Buchanan added to Russ' habeas corpus action. Russ is discussed later in this opinion.

The Commissioner concluded Judge Buchanan lacked jurisdiction as to the 71 prisoners, as to Martin, and as to the 8 others added to Russ' habeas corpus action.

As to the 71 prisoners whom Judge Buchanan ordered released, Judge Buchanan ruled they were being held for a debt owed to the City and that their detention was in violation of § 16 of the Kansas Constitution Bill of Rights. Section 16 of the Kansas Constitution Bill of Rights provides: "No person shall be imprisoned for debt, except in cases of fraud."

The City argues Judge Buchanan had no jurisdiction to order the release of these prisoners because he decided issues not raised by any party; there were no pleadings filed in the case; he failed to give the City and the Wichita Municipal Court sufficient notice to allow them to prepare for the hearings; he joined the 71 prisoners without establishing any criteria by which to determine commonality of issues; and he granted wholesale relief to this group of inmates without examining the specific facts and law applicable to each individual inmate's situation.

The City also argued there was no case or controversy before the trial court; rather, it was Judge Buchanan who created a controversy of his own making by exceeding his judicial authority and by becoming a de facto party and active participant with adversarial interests in the case. The City notes that none of the prisoners contested the authority of the municipal court judges to commit them to jail.

The City makes numerous other arguments that we do not deem necessary to set forth, as we agree from the record before us that the trial court did not have jurisdiction.

The Commissioner concluded Judge Buchanan lacked jurisdiction in this matter for the following reasons:

1. None of the 71 prisoners created a case in controversy for adjudication in the district court and none of the prisoners requested the district court for relief of any kind. None of the 71 prisoners filed a petition for writ of habeas corpus; none appealed his or her municipal court conviction or contempt judgment; none attempted to pursue statutory provisions found in K.S.A. 12-4601 and K.S.A. 1999 Supp. 22-3609 for prosecuting an appeal from a municipal court conviction; and none filed or had filed on his or

her behalf a civil suit in district court challenging his or her confinement or bond conditions.

2. All of the pleadings in this case were manufactured by Judge Buchanan himself, and there were no parties in the traditional legal sense of the term. The only case in controversy as to these 71 prisoners is that which was created by Judge Buchanan by issuing an order to Sheriff Mike Hill to show cause why these 71 prisoners should not be released, as it appeared they were being held "for the payment of fines only" and that "such persons have been held in custody for sufficient lengths of time to give rise to a presumption that such persons are without funds to pay such fines, and that it appears that such persons are imprisoned solely for the payment of debt in violation of the Fourteenth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights, § 16." No reported cases have been found where a court *sua sponte* initiated habeas corpus relief.

3. Judge Buchanan's authority as Chief Judge of the Eighteenth Judicial District does not include the authority to release these municipal court prisoners on his own motion.

4. No case in controversy was before Judge Buchanan, and he lacked jurisdiction to release these 71 inmates.

We agree that Judge Buchanan had no jurisdiction as to these prisoners, and his orders releasing them on their city convictions are vacated.

## II. ROBERT E. MARTIN, JR.

Likewise, as to Robert E. Martin, Jr., Judge Buchanan had no jurisdiction over Martin because Martin filed nothing with the district court and requested no relief from the district court. Further, Judge Buchanan had no evidence at all, other than the ambiguous jail summary sheet on Martin and an assistant county counselor's statements that Martin's bond, set by the City's municipal court, was cash-only. Judge Buchanan's ruling was based on an assumption or factually unsupported conclusion regarding the nature of Martin's bond. Whether a cash-only bond violates § 9 of the Kansas Constitution Bill of Rights was not properly before Judge Buch-

anan and is not properly before this court. Judge Buchanan's order regarding Martin and his ruling as to a cash-only bond are vacated.

## III. REMAINING EIGHT INMATES

Again, these inmates requested no relief; thus, there was no case in controversy and for the reasons set forth above we hold Judge Buchanan had no jurisdiction over the remaining eight inmates.

## IV. WILLIAM W. RUSS, JR.

William Russ' inmate request form asked only that Judge Buchanan consider changing Russ' status from "pay before release" on two municipal court convictions and from "time to pay" on two others to an OR bond. The City was not represented at the hearing on the Russ request apparently because the City had not been given official notice of the hearing. In the absence of any attorney representing the City or the municipal court judges, Judge Buchanan sustained the petition for writ of habeas corpus and ordered the immediate release of Russ on his city charges.

The evidence before Judge Buchanan during the brief hearing on Russ' inmate request form consisted only of (1) a statement by an assistant county counselor that the sheriff's information indicated Russ had been convicted of several violations of city ordinances and that Russ owed $199 before he could be released on the city charges and, apparently, (2) a copy of the order from the municipal court committing Russ on a pay-before-release basis for those convictions. As to Russ, the record indicates there was no other testimony or evidence of any kind regarding his status, no evidence whether Russ had failed to appear before the municipal court as ordered, no evidence or ruling regarding any municipal court contempt procedures that may or may not have been followed in Russ' case, and no evidence regarding any attempt by Russ to obtain release or modification of his bond conditions from the municipal court. We believe that, in light of the foregoing, there were insufficient grounds for ordering that Russ be released on his city charges. Thus, we reverse the district court's order releasing Russ from his city charges.

In so holding, we do believe it appropriate to note our long-standing rule that mandamus is a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business. *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, Syl. ¶ 2, 957 P.2d 379 (1998). While in this action we do not reach the question of the nature of the contempt proceedings before the City in Russ' case and other cases, or the question of the jurisdiction of the municipal court to hear an indirect contempt proceeding in a proper case before us with similar facts, and on a similar record as to the municipal court procedures followed here, we doubtless would be skeptical of the City's contentions that the proceedings sounded in indirect contempt and of the City's ability to meet its burden to show it had statutory or other authority to proceed with an indirect contempt action.

## V. MANDAMUS ACTIONS

The remaining two cases are the mandamus actions filed by the City against Sheriff Hill and Judge Buchanan.

Sheriff Hill argued that he complied with a court order when he released the municipal court prisoners and that he could have been held in contempt had he not obeyed Judge Buchanan's orders. Sheriff Hill asserts that his compliance with Judge Buchanan's order was not only proper but was a prudent course of action as well.

The Commissioner concluded that a writ of mandamus should not be issued against Sheriff Hill because he could find no wrongdoing on the part of Sheriff Hill and that he had acted during these cases in accordance with the orders of the district court which had apparent jurisdiction. We agree.

The mandamus action against Sheriff Hill is denied.

The Commissioner recommended that a writ of mandamus not be issued against Judge Buchanan. We deny the petition for writ of mandamus for the reason that this court's holdings in Nos. 81,491 and 81,632 are sufficiently instructive regarding the matter.

In summary:

A. As to the 71 prisoners, we reverse Judge Buchanan's ruling ordering their release for the reason that he lacked jurisdiction to enter his order. Because he had no jurisdiction over these inmates, his ruling that these prisoners were being held for debt in violation of § 16 of the Kansas Constitution Bill of Rights is vacated as well.

B. As to Martin, we reverse Judge Buchanan's ruling ordering Martin's bond be either by cash or by surety for the reason Judge Buchanan lacked jurisdiction over Martin and lacked jurisdiction to enter his order.

C. As to the additional inmates, besides Martin, added to Russ' habeas corpus action, we hold that Judge Buchanan had no jurisdiction over them and that any rulings made in connection with his consideration of those eight are vacated.

D. As to Russ, we hold that habeas corpus relief does not lie under the facts of this case, and we reverse the order releasing Russ from his city charges.

E. We deny the request for a writ of mandamus against Sheriff Hill for the reason that Hill was merely complying with what appeared to be valid and lawful orders of the district court.

F. We deny the request for a writ of mandamus against Judge Buchanan for the reason that this court's holdings in the two appeals are sufficiently instructive regarding the matter considered herein.

Six, J., not participating.

Steve Leben, District Judge, assigned.[1]

Leben, J., concurring and dissenting. I concur in parts I through III and V of Justice Abbott's well-considered decision. As to the appeal involving William W. Russ, Jr., however, I would find, as did the trial judge and the Commissioner appointed by this court, that Russ could not properly be held on the municipal court's contempt finding and pay-before-release jail order. Accordingly, I would affirm Judge Buchanan's order that Russ be released from confinement under the contempt finding.

## I.

William Russ was fined a total of $199 in the Wichita Municipal Court for four separate traffic infractions and one other ordinance violation: parking in a handicapped zone, having a defective headlight, speeding, driving without a valid driver's license, and re-

---

[1] **REPORTER'S NOTE:** Judge Steve Leben was appointed to hear case No. 81,491 vice Justice Six pursuant to the authority vested in the Supreme Court by art. 3, sec 6(f) of the Kansas Constitution.

maining in a park after hours. Russ could not have been sentenced to jail for any of these acts. He was given a specified period of time, not set out in the record, within which to pay these fines. If he failed to do so, he was instructed at the time of initial sentencing, he was automatically required to appear for a specified municipal court docket.

Whether Russ appeared at the scheduled docket—or whether his later appearance was after arrest on a bench warrant for failure to appear—is not known from the record. The specifics of what transpired when he was next brought before a municipal judge are difficult to determine as well, as no record was made of that hearing. Several things are clear, however, and they were sufficient to establish a justiciable habeas corpus claim in the district court.

At Russ' appearance before the municipal judge, the judge considered whether to find Russ in contempt of court for failure to pay the fines. No written accusation of the alleged contempt was filed or given to Russ. No attorney was provided to assist Russ, even though he had failed to pay $199 for some period of time and a contempt finding might send him to jail. No record was made of the hearing and no written findings were made.

One of the Wichita municipal judges testified, in a related proceeding on June 29, 1998, before Judge Buchanan, about the procedures used in these hearings. The municipal judge testified that the evidence in support of a contempt finding usually was that the defendant had failed to pay anything on a court-ordered fine for a long period of time. The judge testified that, as part of any contempt finding, he first makes an affirmative oral finding that the defendant was capable of paying on the fine and, thus, complying with the court's order. After finding the person in contempt, the judge informs the person that he or she is being sent to the county jail on a pay-before-release basis—not to be released until paying the fine in full. According to the Commissioner's factual findings, which are not challenged on this point, a limited number of spaces are available in a work-release program so that prisoners would have access to the ability to earn their release. Because of the limited space in that program, however, the Commissioner found that inmates are placed on a waiting list and may wait for many weeks

or even months before being able to leave the jail on work release to earn money to pay their fines and regain their freedom.

Russ was sent to jail on a pay-before-release basis until he paid the $199 in fines. There is no journal entry of his conviction and no journal entry of a contempt finding. There was simply an order to the sheriff to hold him in the jail until he paid $199. Russ' contempt hearing, which began his incarceration for contempt, apparently occurred on June 25, 1998.

On July 7, 1998, Russ filled out an "inmate request form." At the top of the form, Russ wrote in the name of Judge Buchanan. By this time, of course, Judge Buchanan had already ordered the release of 71 other prisoners being held on a pay-before-release basis, a fact that we can assume had not gone unnoticed among other residents of the jail. In this "request form" to Judge Buchanan, Russ said that he had "been to video court" but had been placed on pay-before-release status. Russ said he was unemployed and asked for "reconsideration to an O.R. [own recognizance] bond, so I can secure gainful employment, and pay the fines . . . ."

Judge Buchanan received this request on July 8, 1998. He ordered it filed with the court clerk, set a hearing for 4 p.m. the following day, and directed that an assistant county counselor notify the City's attorney of the hearing.

At the July 9 hearing, Judge Buchanan had before him both the inmate request form and another document from Russ, which Judge Buchanan said was a letter that had been received that same day. That letter is not contained in the appellate record. The hearing transcript shows that the assistant county counselor who participated in the hearing had with him various papers regarding the charges on which Russ was being held and the municipal court form placing Russ into the sheriff's custody on a pay-before-release basis. The transcript shows that both of those documents were reviewed by Judge Buchanan, but neither of them is in the appellate record. In addition to what is directly reflected in the July 9 hearing transcript, Judge Buchanan also knew exactly what the pay-before-release documents he was reviewing meant—they were the

focus of the June 29 evidentiary hearing in which a municipal court judge testified in detail about that court's procedures.

I have reviewed the proceedings in some detail because the majority has concluded, from its review of the record, that "there were insufficient grounds" shown in the record for sustaining Russ' habeas petition. This is a surprising conclusion because the City, in its appeal, does not raise any issue as to the sufficiency of the record. Nor does the City raise any issue as to a lack of notice of the hearing, even though it comments on a lack of "official notice" and says that none of its attorneys were "available" to attend the hearing. The City's failure to raise these issues, at least on the record here, is quite understandable. The City, as the appellant, has the burden to designate an appellate record from which any insufficiency in the information available to Judge Buchanan could be judged. See *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, Syl. ¶ 7, 647 P.2d 1268 (1982). At least two of the documents reviewed by Judge Buchanan in the July 9 hearing and the letter from Russ to the judge have not been included in the record. Thus, the City could not successfully challenge the district court's ruling on the basis of some insufficiency in the record.

Nor could the City challenge the district court's ruling on the basis that proper notice of the July 9 hearing had not been provided to it. According to the journal entry of the district court, oral notice of that hearing was given to the City's attorney by an assistant county counselor. The accuracy of that finding was not challenged below. When a matter is urgent, Supreme Court Rule 131 (1999 Kan. Ct. R. Annot. 169) provides for such notice "as is reasonable and possible under the circumstances." When he received Russ' inmate request form on July 8, Judge Buchanan wrote at the top of the document: "Set for hearing July 9, 1998 at 4:00 p.m. in Division 15, 11th Floor." He then had the document filed with the clerk and separately directed an assistant county counselor to provide notice to the City's attorney. That notice was provided orally. As of July 8, from the face of the inmate request form, Russ had been in jail for 13 days—on a basis that Judge Buchanan had reason to believe was illegal. Surely it is not an abuse of discretion for a

judge in that circumstance to set a hearing for the following afternoon and to have notice of the hearing provided orally.

The City also has not challenged Judge Buchanan's consideration of the testimony previously heard on June 29 in deciding the Russ case. After transferring jurisdiction here, this court appointed a commissioner with the power "to hear testimony and make findings of fact necessary" for determination of the issues. After discussions with the parties, however, the Commissioner determined that there was no need for further testimony: He cited the June 29 testimony of the municipal judge regarding the procedures used by the City and the City has accepted that testimony. Had the City attended the July 9 hearing, its attorney surely would have conceded that the procedures used in the Russ case were the same ones described at the June 29 hearing, just as the City has conceded before this court that those procedures were used in *all* of the cases under consideration here. The City's arguments, with respect to Russ, have focused on the propriety of its procedures and on some other limitations to the availability of habeas corpus relief, not on a failure to repeat the evidence taken on June 29 as part of the July 9 hearing.

The majority also notes that Russ' inmate request form "asked only" that Judge Buchanan consider changing his status from "pay before release" to "time to pay" or to release him on a recognizance bond. It is not clear whether the majority considers this one of the deficiencies that leads to its conclusion that there "were insufficient grounds" to sustain a habeas petition here or not. The City has argued in this appeal that Russ' inmate request form, on its face, did not raise a constitutional claim. It has not argued, however, that it was improper to treat it as a habeas petition. Rather, its argument is simply that the judge went outside the issues raised by that pleading when he addressed constitutional claims, including whether Russ had been imprisoned on a debt in violation of the Kansas Constitution. Ultimately, we need not reach any constitutional issues in deciding this case. As the district judge and the Commissioner found, there is no defect in the form of Russ' inmate request form that should prevent treating it as a habeas request for relief.

"Pro se pleadings are to be liberally construed." *State v. Andrews*, 228 Kan. 368, 370, 614 P.2d 447 (1980). See also *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) (pro se habeas petitions are construed liberally). Granting Russ either time-to-pay status or release on a recognizance bond would have had the effect of eliminating the sanction placed on him by the contempt finding, *i.e.*, incarceration pending payment of the fines. The failure of Russ to make specific allegations that he had been jailed as a result of illegal contempt proceedings is neither surprising nor fatal to consideration of his case, particularly since he had not received either a written accusation in contempt or a written finding of contempt, as is required under Kansas statutes in an indirect contempt proceeding. Russ knew that there was a pay-before-release status and a time-to-pay status, both of which were noted in his form. He also indicated that he was unemployed, which certainly could be construed as an attack on any finding the judge had made that he had willfully failed to pay the fines. It was appropriate to treat this form as a habeas corpus petition.

Although not listed among the formal issues on appeal in the City's initial brief, the City did raise two other arguments against consideration of Russ' habeas petition in the City's exceptions to the Commissioner's report. In that brief, the City for the first time raised the immediate release doctrine, under which habeas corpus relief is unavailable when a favorable decision would not result in the prisoner's immediate release. The City cites *Martin v. Amrine*, 156 Kan. 384, 133 P.2d 582 (1943), and argues that since Russ was also being held on felony charges (on which Russ said he planned to post bond), his habeas claim should not be considered.

The City's argument on this point is unavailing because the immediate release doctrine is no longer good law. The Kansas court's adoption of the doctrine was based upon the United States Supreme Court's decision in *McNally v. Hill, Warden*, 293 U.S. 131, 79 L. Ed. 238, 55 S. Ct. 24 (1934). *McNally* was itself overruled in *Peyton v. Rowe*, 391 U.S. 54, 20 L. Ed. 2d 426, 88 S. Ct. 1549 (1968). The immediate release doctrine has not been applied in a Kansas appellate case since then, and this court has allowed habeas actions to proceed in two cases in which the immediate release

doctrine's application otherwise would have denied relief. *Davis v. State,* 202 Kan. 192, 193, 446 P.2d 830 (1968); *Jackson v. State,* 202 Kan. 194, 195, 448 P.2d 18 (1968). In addition, as noted in the *Davis* and *Jackson* opinions, the Kansas Supreme Court amended its rules, which previously had codified the immediate release doctrine into a court rule, by removing that provision after *McNally* was overruled. The immediate release doctrine simply does not prevent consideration of Russ' habeas claim on the merits.

The City's final argument is that Russ should have been required to exhaust his remedies in the municipal court by asking it to release him before bringing a habeas petition in the district court. This argument also fails. First, municipal courts have no jurisdiction over habeas corpus actions. Thus, unless otherwise provided by law, a habeas claim is naturally first asserted in the district court. Second, the only statutory exhaustion requirement found in the habeas statutes, in K.S.A. 60-1507(e), is applicable only when a prisoner is "in custody under sentence of a court of general jurisdiction," not when under sentence of a municipal court. See also *In re Habeas Corpus Application of Gilchrist,* 238 Kan. 202, 205-06, 708 P.2d 977 (1985) (K.S.A. 60-1507 is not applicable to municipal court convictions). Third, while the record discloses that Russ had "been to video court" before a municipal judge, the municipal court made no record of that proceeding. Thus, whether Russ attempted to seek release from the municipal court cannot be reviewed on this record and, since the City has the burden to provide a record supporting its appeal, its appeal cannot be successful on this issue.

In sum, the record demonstrates that Judge Buchanan had before him on July 9 a justiciable habeas corpus petition. The inmate request form filled out personally by Russ had, at Russ' request, been forwarded to Judge Buchanan. And the procedures used by the municipal court in finding Russ in contempt were sufficiently set forth in the record before the district court to raise the one question that is ultimately determinative here: whether the municipal court had subject matter jurisdiction to hold contempt hearings when a person failed to pay a traffic fine.

## II.

On the merits, I would affirm Judge Buchanan's order on the basis that the municipal court had no authority to hear and decide the issue of whether Russ was in indirect contempt of an order of that court. Accordingly, the municipal court was without jurisdiction to enter a finding of contempt and that order, as well as the corresponding requirement that he pay the fines in full before he could be released, must be set aside.

Because municipal courts are not courts of record, they do not have inherent power to punish for indirect contempt. Only courts of record have inherent authority to punish for contempt of court. *Cyr v. Cyr*, 249 Kan. 94, 99, 815 P.2d 97 (1991) (power to punish for contempt is an inherent power of the court; no issue presented regarding powers of municipal courts); *In re Millington*, 24 Kan. 214, Syl. ¶ 1 (1880) ("Courts of record have an inherent power to punish for . . . any . . . interference with their proceedings which amounts to actual contempt.").

Kansas case law has traditionally provided that municipal courts, police courts at the time of the cases cited below, had no power to punish for indirect contempt. *In re Palmeter*, 58 Kan. 809, 812, 51 Pac. 288 (1897); *In re Rich*, 10 Kan. App. 280, 283, 62 Pac. 715 (1900). Thus, if a municipal court is to have jurisdiction over indirect contempt matters, its jurisdiction must come from legislative enactment. No statute provides that authority.

K.S.A. 1999 Supp. 12-4106 gives a municipal judge the power to "fine or imprison for contempt committed *in court* or for failure to obey process issued by such municipal judge, in the same manner and to the same extent as a judge of the district court." A "contempt committed in court" would appear to be equivalent to "direct contempt," which is contempt committed in the presence of the sitting court or the judge sitting in chambers. *State v. Shannon*, 258 Kan. 425, 435, 905 P.2d 649 (1995). The failure to pay the fine occurs outside the judge's presence. Bringing a person into court to explain why he or she failed to make a payment outside of court does not transform the failure to pay into a direct contempt. The remainder of K.S.A. 1999 Supp. 12-4106, which pro-

vides that a municipal judge "shall have the power to . . . enforce all orders, rules and judgments made by such municipal judge" is essentially identical to the statutes in place at the time *Palmeter* and *Rich* were decided. It does not provide specific, express authority to consider an indirect contempt matter.

Nor do the general contempt statutes, K.S.A. 20-1201 *et seq.*, provide the needed authority. For courts of record, which have inherent authority over all types of contempt proceedings, these statutes govern the procedures that must be followed in a contempt proceeding. *Cyr*, 249 Kan. at 99. However, there is no provision within these general contempt statutes purporting to grant authority over indirect contempt proceedings to municipal courts.

In its brief in response to the Commissioner's report, the City concedes that municipal courts are not authorized to hear indirect contempt matters. The City also concedes that it is required that testimony in an indirect contempt proceeding be recorded. Because of this, the City argues that the failure to pay a fine should be treated as a direct contempt. The City's attempt to call a rose a sunflower is not persuasive. The act at issue—failure to pay the fine—did not occur in the presence of the judge, and the facts related to whether it constitutes contempt, *i.e.*, the financial ability of the defendant to pay, are not self-evident when the defendant appears in front of the judge.

This court, like any other, has the duty to raise jurisdictional questions. The habeas corpus claim was properly before the district court and is properly before this one as well. The record shows that the municipal court's proceeding was a direct contempt proceeding, something that the municipal court had no jurisdiction to consider. Accordingly, I would affirm Judge Buchanan's judgment upholding Russ' habeas claim.

LOCKETT, J., joins in the foregoing concurring and dissenting opinion.