NOT DESIGNATED FOR PUBLICATION

No. 115,890

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTIAN DEMARCUS ROBBINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed May 25, 2018. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant, and *Christian D. Robbins*, appellant pro se.

*Jodi Litfin*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER, JJ.

PER CURIAM: On July 31, 2009, the State charged Christian Demarcus Robbins with intentional second-degree murder, attempted intentional second-degree murder, intentional aggravated battery, criminal discharge of a firearm at an occupied vehicle, and criminal possession of a firearm. The charges arose out of an incident on July 12, 2009, in which Robbins fired multiple shots into a vehicle driven by Bryce Martindale and also occupied by Michael Lopez. Lopez was struck and killed, and Martindale was injured. Robbins claimed he fired the shots in self-defense.

1

*Procedural History*

Public defenders Stacy Donovan and Albert Bandy were appointed to represent Robbins, and trial was ultimately set for May 3, 2010.

In January 2010, Robbins sought to remove Donovan as one of his counsel based on a claimed conflict of interests. The court substituted attorney Reid Nelson for Donovan. Bandy remained on the case.

On April 29, 2010, the State moved to amend the charges against Robbins to include a charge of felony murder under K.S.A. 21-3401(b)—now K.S.A. 2017 Supp. 21-5402(a)(2).

On May 3, 2010, the day the case was set for trial, the court heard arguments on the State's motion to amend the complaint. Robbins' counsel objected to the amendment, arguing that Robbins would be prejudiced at the trial that was about to commence. The court granted the State's motion because the amendment did not prejudice Robbins, denied Robbins' request for a new preliminary hearing, and continued the trial to 1:30 p.m. on June 28, 2010.

On June 24, 2010, Bandy and Nelson moved to withdraw as counsel, claiming that a total breakdown in communication between them and Robbins made it impossible for them to effectively represent him at the upcoming trial. Because trial was less than a week away, the district court chose not to remove Bandy and Nelson but instead appointed attorney Jonathan Phelps as "independent counsel for the limited purpose of giving the defendant a second opinion." Phelps noted that Robbins had refused to communicate with Bandy and Nelson in spite of the fact that Bandy and Nelson had provided Robbins with proper advice and proper interpretations of the law. The only

2

possible problem that Phelps saw with their representation was failing to secure a witness Robbins wanted for trial.

On June 28, 2010, the day of trial, Robbins entered into a plea agreement with the State after conferring with his three attorneys. Pursuant to the agreement, Robbins pled guilty to (1) intentional second-degree murder, (2) the reduced charge of intentional aggravated battery with a deadly weapon, and (3) criminal possession of a firearm. In exchange, the State dismissed the remaining charges. Before accepting Robbins' pleas, the district court engaged in an extended, detailed, and comprehensive colloquy with Robbins to assure that he fully understood the charges, the details of the plea agreement and its consequences, the rights he would forego by entering these pleas, and the consequences of pleading guilty.

The court asked Robbins if he had had an opportunity to review the plea agreement and if he understood the plea agreement. Robbins responded that he had a chance to review the plea agreement with Bandy, Nelson, and Phelps and that he understood the agreement.

The court then went through a detailed discussion to insure that Robbins understood the plea agreement. The court advised Robbins that he could ask questions at any time if there was any portion of the plea agreement or ensuing conversation that he did not understand. Robbins acknowledged that he understood. On further questioning, Robbins stated that he understood the charges to which he was pleading guilty; that he understood that if he pled guilty to the charges he would be convicted of the charges without a trial; that he understood that if he was convicted he would be sentenced; that in the plea agreement the State requested that any sentences run concurrent with each other; and that the plea agreement was between him and the prosecution and the court was not bound by it.

3

Robbins told the court that he went over with his attorneys the sentencing grid and his possible sentences. The court then provided Robbins with a copy of the sentencing grid and explained where each of his crimes would fall on the grid and what the maximum sentence for each crime could be. Robbins followed along and read to the court the correct number for the maximum possible sentence for the controlling crime of murder in the second degree. The court went through the same process with the remaining counts. Robbins responded that he understood the possible sentences. The court explained to Robbins what a presumed sentence was, what happened when a special ruled applied, what a criminal history score means, and how it would be used to calculate his sentence. Robbins responded that he understood. Then, based on the current belief that Robbins' criminal history score was C, the court asked Robbins to move along the sentencing grid and state the range of sentences for his controlling crime. Robbins accurately told the court the range of numbers that fell in a severity level 1 criminal history score of C box. Robbins stated that he understood that the court would likely be sentencing him to the prison term indicated in the box. The court did the same thing for the remaining crimes. The court discussed the possibility of a departure and asked Robbins if he understood that he could file for a departure. Robbins responded that he understood.

The court then informed Robbins of his rights and how they would be affected by a guilty plea. Robbins stated he understood that by pleading guilty Robbins would be giving up the right to appeal his conviction. The court informed Robbins of all of the constitutional rights that he would be waiving by entering a plea of guilty. Robbins responded that he understood that he was waiving these rights. Robbins stated that he understood that he did not have to enter into a plea agreement.

The district court next asked Robbins questions about the facts relating to the crimes to which he was pleading guilty. Robbins stated that he intentionally shot his gun into a car that was occupied by Lopez, resulting in the death of Lopez. He stated further

that he intentionally shot his gun into the car occupied by Martindale in a manner that could have killed Martindale.

Robbins stated that he had had ample opportunity to meet with his attorneys about his case and about any possible defenses that he would have to the charges against him; that he was satisfied with their advice; and that he did not have any mental condition or defect that would interfere, impair, or in any way harm his ability to make a voluntary plea. Robbins reaffirmed that he understood the pleadings and the consequences of his pleas. He stated that no one had threatened him or coerced him into entering the pleas. Robbins reaffirmed that he had enough time and opportunity to consider entering these pleas. Robbins then pled guilty to each crime.

The next day, the State filed an amended complaint consistent with the plea agreement.

On September 1, 2010, Robbins moved for a durational departure in which he contended that his sentence should be reduced from the grid sentence because (1) his failed self-defense argument should still be treated as a mitigating factor and (2) he did not attempt or intend to kill Lopez. He claimed that his decision to enter the plea of guilty was greatly influenced by the holding in *State v. Kirkpatrick*, 286 Kan. 329, 335-36, 184 P.3d 247 (2008), *abrogated on other grounds by State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013), which prevented him from entering evidence of self-defense in this felony-murder case.

On September 3, 2010, the district court denied Robbins' departure motion and sentenced him to 272 months in prison and 36 months' postrelease supervision.

5

On September 9, 2010, Robbins appealed his sentence, and our Supreme Court affirmed. *State v. Robbins*, No. 105,382, 2011 WL 6141438, at *1 (Kan. 2011) (unpublished opinion).

On August 23, 2012, Robbins filed a pro se motion to withdraw his pleas. In this motion he alleged (1) ineffective assistance of counsel, (2) his appointed counsel had a conflict of interests, and (3) judicial misconduct. The State responded, asserting that the court should deny Robbins' motion because he failed to show any manifest injustice.

On July 1, 2013, the court granted a motion filed by Robbins' newly appointed counsel for a competency evaluation and ordered Robbins to be evaluated by Dr. David Blakely.

On July 18, 2013, Dr. Blakely completed his evaluation based on his observations which were made over three years after Robbins' plea hearing. Dr. Blakely spent one hour with Robbins before issuing his report. He apparently did not review the transcript of the plea hearing to aid in his evaluation. Based on his observations Dr. Blakely opined that Robbins was "able to understand what he [was] charged with and help in his own defense," but that Robbins' understanding was at a superficial level and he would require a lot more time to fully understand the details of the court process. According to Dr. Blakely, someone would have to spend more time with Robbins to help him truly understand what is going on.

The district court denied Robbins' motion to withdraw his pleas, and this appeal followed.

Robbins argues on appeal that the district court should have given him an evidentiary hearing and granted his motion to withdraw his pleas in order to prevent manifest injustice because (1) he had ineffective assistance of counsel, (2) he was misled

6

and coerced into pleading guilty, and (3) his plea was not knowingly and understandingly made.

*Review Standards*

Because the district court summarily denied Robbins' motion without providing an evidentiary hearing, we consider Robbins' motion de novo. See *State v. Kelly*, 298 Kan. 965, 969, 318 P.3d 987 (2014). Summary disposition of Robbins' motion is appropriate if there is no substantial question of law or triable issue of fact and the record conclusively shows that he is not entitled to relief. Robbins bears the burden of showing there are sufficient facts to warrant a hearing on his motion. Unsupported conclusions are not sufficient to raise a substantial issue of fact. 298 Kan. at 969.

In order for Robbins to avoid summary disposition on his postsentencing motion, Robbins had to show manifest injustice. See K.S.A. 2017 Supp. 22-3210(d)(2). Manifest injustice is defined as something that is "obviously unfair or shocking to the conscience." *State v. Oliver*, 39 Kan. App. 2d 1045, 1048, 186 P.3d 1220 (2008). Robbins can show manifest injustice by demonstrating: (1) he was not represented by competent counsel; (2) he was misled, coerced, mistreated, or unfairly taken advantage of; or (3) his plea was not fairly and understandingly made. See *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006); see also *State v. Green*, 283 Kan. 531, 545-46, 153 P.3d 1216 (2007) (applying the *Edgar* factors to the manifest injustice analysis for a postsentence motion to withdraw a plea).

*Robbins Had Competent Counsel*

Robbins asserts that his counsel were incompetent because (1) they did not properly inform him that self-defense, stand your ground, and compulsion were available defenses and they did not properly assert these defenses; (2) they did not object to the

7

State's motion to amend its complaint when the amendment alleged a greater crime; (3) they failed to locate, interview, and subpoena his star witness; (4) they failed to move for a competency evaluation after they found out about his mental deficiencies; and (5) they had a conflict of interests that prevented them from zealously representing him.

Whether counsel were ineffective is measured by the constitutional standard. *State v. Morris*, 298 Kan. 1091, 1103, 319 P.3d 539 (2014). The constitutional standard requires Robbins to show that (1) his counsels' performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for counsels' errors, the result of the proceeding would have been different. See *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004) (quoting *Chamberlain v. State*, 236 Kan. 650, 657, 694 P.2d 468 [1985]). "When a defendant seeks to withdraw a plea, he or she must show that, but for counsel's unreasonably deficient performance, the defendant would not have entered a plea but would have insisted on going to trial." *Morris*, 298 Kan. at 1103-04.

*Self-defense*

Robbins claims that his counsel failed to properly advise him of his right to claim self-defense and that he would have been granted immunity if his counsel had moved for an immunity hearing under K.S.A. 21-3219 based on his claim of self-defense. But in *Kirkpatrick*, our Supreme Court held that self-defense is not available as a defense to a charged of felony murder when the underlying felony is criminal discharge of a firearm at an occupied vehicle. 286 Kan. at 335-36. Just like in *Kirkpatrick*, Robbins was charged with felony murder with the underlying felony being criminal discharge of a firearm at an occupied vehicle. The hearing Robbins sought would have been a futility in light of controlling law from our Supreme Court. Robbins was correctly advised on the law.

Robbins has not shown that his counsel's performance fell below the objective standard of reasonableness.

*Amended Complaint*

Next, Robbins claims that his counsel failed to object to the State amending the complaint to include a greater offense. He claims that the amended complaint hindered his defense and his counsel failed to raise this argument.

First, as noted earlier, his counsel did object. The amended complaint was permitted over Robbins' counsels' objection that the late filing of the amended complaint would prejudice Robbins at trial.

Second, as our Supreme Court noted in *State v. Woods*, 250 Kan. 109, 115, 825 P.2d 514 (1992), the State generally has wide discretion to amend a complaint prior to trial by adding new or different claims, so long as the defendant's substantive rights are not prejudiced. Here, Robbins was bound over for trial following the preliminary hearing on the charges of intentional second-degree murder and criminal discharge of a firearm at an occupied vehicle. The addition of the felony-murder charge did not change the facts needed to support a conviction at trial. Robbins had an opportunity to confront the witnesses against him at his preliminary hearing, so his due process rights were not violated.

*Locating a Witness*

Next, Robbins claims that his lawyers were ineffective in not locating, interviewing, and subpoenaing for trial a witness who, he claims, would testify that Robbins acted in self-defense.

9

Robbins complained to the court about this at the hearing on June 28, 2010, before his plea hearing. He acknowledged that his lawyers' investigator went to the witness' grandmother's house but the grandmother did not know where the witness was. Lawyer Bandy confirmed that his investigator had been unable to locate the witness. "We don't know if she's basically ducked out or hiding or just exactly what her testimony would be." In any event, the extent of the lawyers' search for this witness is immaterial and does not warrant an evidentiary hearing since Robbins states that the witness would testify to a defense that was not available to him in view of the amended charge of felony murder.

*Competency Evaluation*

Next, Robbins claims that his counsel should have moved for a competency evaluation under K.S.A. 22-3302 before he entered his pleas. K.S.A. 22-3302(1) provides in pertinent part that "after the defendant has been charged with a crime and before pronouncement of sentence . . . the defendant's counsel . . . may request a determination of the defendant's competency." A person is deemed to be incompetent to stand trial "when he is charged with a crime and, because of mental illness or defect is unable:  (a) To understand the nature and purpose of the proceedings against him; or (b) to make or assist in making his defense." K.S.A. 22-3301(1).

Robbins apparently told his attorneys about his mental deficiencies before the plea hearing. But there is nothing to indicate that Robbins' mental deficiencies prevented him from understanding the nature and purpose of the proceedings against him or prevented him from being able to assist in his own defense. Before entering his pleas, Robbins made at least two motions for the appointment of new counsel. At the hearing on one of those motions Robbins stated, "This is not a misdemeanor, Your Honor, you know, and this is my life on the line, you know, and I'm going to be the one at the end doing the time, nobody else, Your Honor." He certainly understood the nature and seriousness of the proceedings against him. Further, his statements at the extensive colloquy the court

10

conducted at his plea hearing belie the notion that he did not understand the nature and purpose of the proceedings or that he could not intelligently enter his pleas. There was no reason for Robbins' counsel to move for a mental competency evaluation based on their understanding and observations of his mental condition.

*Conflict of Interests*

Next, Robbins claims that attorneys Nelson and Bandy had conflict of interests because Robbins had asked for the removal of attorney Donovan, who worked in the public defender's office along with Nelson and Bandy. According to Robbins, because these three lawyers worked in the same office, Nelson and Bandy were loyal and committed to Donovan and not to their client.

Robbins' claim is based on pure speculation. There is no evidence to suggest that Nelson and Bandy neglected their duties as lawyers or that their representation was in any way affected by any personal interests or by any duties owed to a third person. Phelps, an attorney in a different firm, stated that he thought that Nelson and Bandy had given Robbins correct legal advice. Phelps observed no conflict of interests. The attorney-client relationship between Robbins on the one hand and Nelson and Bandy on the other was strained only because Robbins refused to communicate with Nelson and Bandy after they gave him their honest advice on how the case could proceed. Robbins fails to sustain his burden of showing a conflict of interests.

*Robbins was Not Misled, Coerced, Mistreated, or Unfairly Taken Advantage of*

Robbins asserts that his counsel misled and coerced him into believing that he could not claim self-defense to the charges against him. But, in fact, as discussed above, self-defense was not available to Robbins on the amended charge, and his attorneys

correctly advised him about this. *Kirkpatrick* controls, and we are bound by it. Robbins was not misled or coerced into accepting the plea agreement.

*Robbins' Pleas were Fairly and Understandingly Made*

Robbins asserts that he did not understand the plea agreement and was not competent to enter into it. He relies on Dr. Blakely's report. As noted earlier, Dr. Blakely did not have before him the transcript of Robbins' plea hearing. We do. We have recounted the extremely detailed and comprehensive proceedings by the district court to assure that Robbins' pleas were freely, knowingly, voluntarily, and intelligently made. We have no reservations or doubts that Robbins' pleas were freely, knowingly, voluntarily, and intelligently made.

Robbins also argues that his pleas were not understandingly made because he did not have an opportunity to review the second amended complaint before entering into the plea agreement. The second amended complaint was not the amendment that added the claim of felony murder. That was the first amended complaint. The second amended complaint was prepared just before the plea hearing and filed the following day. It merely memorialized the provisions of the plea agreement that called for the State to dismiss the charges of felony murder, criminal discharge of a firearm at an occupied vehicle, and attempted second-degree murder and for the State to reduce the charge of intentional aggravated battery from a severity level 3 person felony to a severity level 7 person felony.

*No Violation of Due Process by Not Holding a Hearing on Dr. Blakely's Report*

Robbins claims for the first time on appeal that his due process rights were violated when the district court summarily denied his motion to withdraw his plea in spite of the substantial issue of fact regarding his competency. We have unlimited review over

claimed due process violations. *State v. Swafford*, 306 Kan. 537, 543, 394 P.3d 1188 (2017).

Generally, we do not consider issues raised for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). But we may consider a newly raised issue if (1) the issue involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the issue is necessary to serve the ends of justice or to prevent the denial of a fundamental right; or (3) the district court is right for the wrong reason. *State v. Spotts*, 288 Kan. 650, 652, 206 P.3d 510 (2009). Because a due process violation is a violation of a fundamental constitutional right, we will address the issue.

Robbins argues that the court was required to conduct a hearing under K.S.A. 22-3302(1) before deciding whether to permit him to withdraw his plea. That statute calls for proceedings to be suspended and a competency hearing held if there is reason to believe that the defendant is incompetent. *State v. Davis*, 281 Kan. 169, 177, 130 P.3d 69 (2006), *overruled on other grounds by State v. Ford*, 302 Kan. 455, 353 P.3d 1143 (2015). But this statute applies only when the competency issue arises sometime in the proceedings before sentencing. K.S.A. 22-3302(1). Here, the question of Robbins' competency was not raised until many years after his sentence was imposed. This statute does not apply.

Robbins also argues that he presented a triable issue of fact about his competency at the time he entered his pleas that should have prevented his motion to set aside his pleas from being summarily denied. Summary disposition of a motion to withdraw a plea is appropriate if there is no substantial question of law or triable issue of fact and the record conclusively shows that the defendant is not entitled to relief. *Kelly*, 298 Kan. at 969. That record includes the transcript of Robbins' plea hearing which we recounted in some detail earlier in this opinion.

13

Here, the judge who presided over Robbins' plea hearing also considered Robbins' motion to withdraw his pleas. Based on her thorough and comprehensive questioning of Robbins at his plea hearing, she had ample evidence from which she could determine that there was no triable issue of fact regarding Robbins' mental competence at the time of his plea hearing. In our de novo review of Robbins' motion, having carefully reviewed the transcript of Robbins' plea hearing, we concur with the district court's conclusion that Robbins' motion does not present a triable issue of fact regarding his mental competency at the time of his plea hearing.

*Sufficiency of the Evidence Supporting Robbins' Pleas*

As a variation on his original claim of judicial misconduct, Robbins asserts as a due process claim what is really a sufficiency issue. Robbins argues in his pro se supplemental brief that there were insufficient facts to support a finding at the plea hearing that he acted with the intent to kill.

Robbins was charged with intentional second-degree murder which is defined in K.S.A. 21-3402(a) as "the killing of a human being committed intentionally." Intentional second-degree murder "is a specific intent crime requiring the defendant to have the specific intent to kill." *State v. Cheffen*, 297 Kan. 689, 703-04, 303 P.3d 1261 (2013).

As stated in *State v. Pope*, 23 Kan. App. 2d 69, 73, 927 P.2d 503 (1996), "specific intent may be proven by the acts of the defendant and the inferences deducible from those acts." In *Pope*, this court held that the intent to kill can be inferred by the defendant's actions when he reached into a car and stabbed the driver. 23 Kan. App. at 73. Further, a statement by the district court regarding specific intent in relation to intentional second-degree murder does not matter when the statement was not made to the jury or was made after the verdict had been rendered during posttrial motions and sentencing. 23 Kan. App. 2d at 74.

14

Here, at Robbins' plea hearing, the court asked Robbins if he intentionally fired the gun at the vehicle and if his actions caused the death of Lopez. The district court did not ask Robbins if he had the intent to kill. But, as stated in *Pope*, intent can be inferred from the defendant's actions. Further, consistent with *Pope*, the district court's observations at the plea hearing on the issue of intent do not undermine the inference that the court, and we, draw from the record.

Robbins told the court at the plea hearing that he intentionally and repeatedly shot his gun into the car that was occupied by Lopez, resulting in the death of Lopez. The inference that can be drawn from this is that Robbins intended to shoot and kill the passengers in the vehicle. Accordingly, there was sufficient evidence from which the district court could find intent.

Affirmed.